UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD ROYCE STOLZ, II,<br><br>Plaintiff,<br><br>v.<br><br>TRAVELERS COMMERCIAL INSURANCE COMPANY, et al.<br><br>Defendants. | No. 2:18-cv-1923-KJM-KJN<br><br><br><br>ORDER |

This case arises out of a claim for insurance coverage under a homeowner's policy issued by Travelers for plaintiff's property located in El Dorado Hills, California. The case has been significantly side-tracked by multiple discovery disputes, which have largely centered around plaintiff's serial failures to make his property available for inspection by Travelers.

On January 8, 2019, plaintiff failed to make his property available for a court-ordered site inspection. (See ECF Nos. 12, 21.) Travelers filed the pending ex parte application for an order to compel the site inspection and for sanctions. (ECF No. 35.) Plaintiff opposed the request for sanctions, and the court held two evidentiary hearings on the matter. (ECF Nos. 72, 97.)

After carefully considering the parties' briefing, the arguments of counsel, the record before the court, and the applicable law, the court GRANTS defendant's ex parte application for sanctions on the terms outlined in this order.

1

I. RELEVANT BACKGROUND

    A. Procedural History

Travelers began attempting to schedule a site inspection of plaintiff's property in August of 2018. (ECF No. 10 at 1.) On November 16, 2018, the parties presented for an informal discovery dispute regarding Travelers' request to inspect plaintiff's property. (ECF No. 11.) After the informal conference, the court ordered an environmental inspection of the property to take place on November 29, 2018, and a formal site inspection to take place on January 8, 2019. (ECF No. 12.) The inspections were ordered to take place whether or not plaintiff could personally attend. (Id.)

Plaintiff failed to make the property available for inspection on November 29, 2018, and Travelers' filed an ex parte application for an order to compel the site inspection and for sanctions. (ECF No. 15.) "Plaintiff's counsel sent Travelers' counsel an email late in the evening on November 28 on the day before the inspection . . . [indicating] that the property was secured and alarmed and would not be available." (ECF No. 15 at 2.) Plaintiff's attorney Mr. Ross represented to the court that plaintiff intended to make clear in a subsequent declaration that he "was unable to make the property available . . . because of a flood at his radio facility in Las Vegas, Nevada," which required plaintiff's personal attention. (ECF No. 19 at 3.)

On December 7, 2018, the court issued an order resetting the environmental site inspection, confirming the formal site inspection for January 8, 2019, and ordering plaintiff, as client, to pay Travelers' $1000.00 in sanctions. (ECF No. 21 at 2.) Importantly, the court ordered plaintiff to "make appropriate arrangements to ensure that Travelers ha[d] the necessary access to conduct the inspections," whether or not plaintiff was able to personally attend. (ECF No. 21 at 2.)

On January 8, 2019, at 1:52 a.m., Mr. Ross texted defense counsel,

> Our client has conveyed to and represented to us that Sacramento attorney John Sargetis would be attending the inspection in his [Plaintiff's] place . . . unfortunately Mr. Sargetis is recovering from an illness (some sort of surgery, I believe, but am not positive) and is apparently not well enough to make it to the inspection.

(ECF No. 36-3 at 2.)

2

Later that day, Travelers filed the pending ex parte application for an order to compel and for sanctions, based upon plaintiff's failure to make his property available on January 8, 2019, as ordered. (ECF No. 35.)

During a January 10, 2019 hearing before the court, John Sargetis was present for a related issue. At the hearing, Mr. Sargetis stated that he had not been asked to attend the January 8, 2019 site inspection and that he was not recovering from surgery during that time. (ECF No. 53 at 15-18.)

On January 11, 2019, the court ordered a further site inspection and gave plaintiff the option to either formally oppose Travelers' ex parte application, or pay Travelers $7,268.21 in consultant costs and attorneys' fees as sanctions. (ECF No. 42 at 2.) Plaintiff chose to formally oppose Travelers' ex parte application.

Thereafter, Mr. Ross filed a motion for leave to withdraw as counsel, which was granted. (ECF Nos. 44, 57.)

On May 17, 2019, the court conducted an evidentiary hearing with respect to plaintiff's opposition to Travelers' ex parte application. Plaintiff appeared without counsel. Testimony was provided by plaintiff, Jeremy Ross, John Sargetis, and Debby Naiman. (ECF No. 72.)

Plaintiff requested a further evidentiary hearing, which the court held on July 19, 2019. Attorney Ben-Thomas Hamilton appeared on behalf of plaintiff and Edward Murphy appeared on behalf of Travelers. (ECF No. 97.) At the second hearing, plaintiff chose not to elicit any additional testimony.

At the conclusion of the hearing, the court ordered Mr. Murphy to provide an accounting of the costs and attorneys' fees Travelers incurred in relation to the pending ex parte application and related evidentiary hearings. (ECF No. 99.) Mr. Murphy filed the accounting, which documents a total of $20,284.16 in costs and fees. (ECF No. 100.) Plaintiff responded. (ECF No. 102.)

B. <u>Plaintiff's Representations to the Court</u>

During the May 17, 2019 evidentiary hearing, plaintiff Edward R. Stolz, II testified under oath. Plaintiff was questioned by Mr. Murphy and the court. Much of plaintiff's testimony was

internally inconsistent or inconsistent with facts established elsewhere in the record.[1]

Toward the beginning of the hearing, the court questioned plaintiff regarding the excuses provided for cancelling the November 29, 2018 site inspection, "Did you in fact have to go to Las Vegas to deal with [flooding in your radio facility]?" Plaintiff responded, "I did not." (ECF No. 75 at 24-25.) After contradictory testimony from Mr. Ross, plaintiff later testified that he actually did go to Las Vegas from November 30, 2019, until December 2, 2018, to deal with the flooding. (ECF No. 75 at 201.)

Plaintiff also testified that he did not recall receiving a copy of the court's order that he pay Travelers $1,000.00 in sanctions, based on his failure to allow the November 29 inspection. (ECF No. 75 at 30-31, 36-37, 41.) However, later in the hearing, Mr. Ross presented a copy of a letter written by plaintiff and dated December 14, 2018.[2] In the letter, plaintiff admitted to having reviewed the court's order that he pay $1,000.00 in sanctions. (ECF No. 75 at 217-18.) Importantly, this order also confirmed the site inspection scheduled for January 8, 2019, which was to "go forward . . . whether or not plaintiff [wa]s able to personally attended." (ECF No. 21 at 2.) Nevertheless, plaintiff testified that he did not receive notice of the January 8 site inspection until January 7, 2019. (See, e.g., ECF No. 75 at 60.)

Prior to the evidentiary hearings, plaintiff represented to the court that during the early hours of January 8, 2019, he asked Mr. Ross to try to postpone the site inspection by 24 to 48 hours. (ECF No. 67 at 11.) Plaintiff also proffered that he "would've been able to contact Ms. Naiman to find out whether she could be present" at the inspection. (Id. at 13.) In contrast, while under oath, plaintiff testified that he asked Mr. Ross to move the January 8 site inspection by thee hours, so that Ms. Naiman could be present. (ECF No. 75 at 53.)

Plaintiff also testified under oath that he called Ms. Naiman to discuss whether she was available for the January 8 site inspection *before* he told Mr. Ross that Ms. Naiman would be

---

[1] Rather than exhaustively setting forth each inconsistency, the court highlights a few of the egregious examples.

[2] Plaintiff did not challenge the validity of the letter. Indeed, by his answers to questions about the letter, plaintiff admitted (at least tacitly) that he wrote it. (ECF No. 75 at 217-221.)

available if the inspection were moved.  (See ECF No. 75 at 66.)  However, Ms. Naiman's testimony and plaintiff's own phone records demonstrate that plaintiff did not speak with Ms. Naiman about the January 8 site inspection until *after* plaintiff had spoken with Mr. Ross during the early hours of January 8, 2019.  (ECF No. 75 at 246-49.)

Moreover, plaintiff firmly denied that he told Mr. Ross that plaintiff planned on having Mr. Sargetis attend the January 8 site inspection on his behalf.  (ECF No. 75 at 81-82.)  Yet, in an email from plaintiff to Mr. Ross on January 8, 2019, at 12:26 a.m., plaintiff informed Mr. Ross, "I have engaged attorney John Sargetis of Sacramento Legal Center to address any subsequent inspection." (ECF No. 75 at 168.)

## II.    LEGAL STANDARD

Under the Federal Rules of Civil Procedure, "[i]f a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders [including] . . . dismissing the action or proceeding in whole or in part. . . [or] treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination."  Fed. R. Civ. P. 37(b)(2)(A)(v), (vii).  "Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).  Rule 37(b) extends to any order to provide or permit discovery.  See Sali v. Corona Reg'l Med. Ctr., 884 F.3d 1218, 1222 (9th Cir. 2018).

Additionally, "federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively and to ensure obedience to their orders. . . [including] the ability to address the full range of litigation abuses through their inherent powers.  While it is preferable that courts utilize the range of federal rules and statutes dealing with misconduct and abuse of the judicial system, courts may rely upon their inherent powers to sanction bad faith conduct even where such statutes and rules are in place."  F.J. Hanshaw Enterprises, Inc. v. Emerald River Dev., Inc., 244 F.3d 1128, 1136 (9th Cir. 2001) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 43-44, 46, 50 (1991)).  However, "[b]ecause of their very potency, inherent powers

5

must be exercised with restraint and discretion." Chambers, 501 U.S. at 44.

If a court imposes a contempt sanction "to punish past conduct, and . . . for a definite amount or period without regard to the contemnor's future conduct, it is criminal. If the sanction is intended to coerce the contemnor to comply with the court's orders in the future, and the sanction is conditioned upon continued noncompliance, it is civil." Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1481 (9th Cir. 1992). "[W]hen a court uses its inherent powers to impose sanctions that are criminal in nature, it must provide the same due process protections that would be available in a criminal contempt proceeding." F.J. Hanshaw Enterprises, Inc., 244 F.3d at 1139 (9th Cir. 2001).

III.     DISCUSSION

    A.     Nature of Sanctions

It is undisputed that on a number of occasions plaintiff failed to obey the court's orders, including the November 20, 2018, and December 7, 2018 discovery orders, when he failed to make his property available for inspection on January 8, 2019. (ECF Nos. 12 and 21.) Yet, plaintiff was unable to justify his failure to obey these orders. As highlighted above, plaintiff's representations and testimony were inconsistent and contradicted by other representations and testimony in the record. Thus, the court concludes that plaintiff lacks any credibility regarding his excuses. Furthermore, the court finds that plaintiff was given ample and appropriate notice of the January 8, 2019 court-ordered inspection, which plaintiff directed his counsel to cancel on less than 12 hours notice, without substantial justification.

Therefore, at a minimum, plaintiff is personally responsible for the costs and attorneys' fees incurred by Travelers in bringing the January 8, 2019 ex parte application to compel the site inspection. See Fed. R. Civ. P. 37(b)(2)(C); accord Sali, 884 F.3d at 1222.

Plaintiff is also responsible for the additional costs and attorneys' fees Travelers incurred in pursuing the ex parte application beyond the initial January 10, 2019 hearing. The court gave plaintiff an opportunity to pay only $7,268.21 in sanctions, for the costs and fees Travelers incurred prior to January 10, 2019. (ECF No. 42.) Instead, plaintiff chose to oppose the ex parte application and move forward with the evidentiary hearings, even after the court explicitly

warned plaintiff that if the court found him not credible, then plaintiff would be responsible for additional sanctions beyond the $7,268.21. (See ECF No. 67 at 8 ("If I find you not credible in that regard . . . then the sanctions will have gone up because then all that time spent in that hearing will then be a sanction that I impose").)

In addition, the court has considered whether plaintiff's conduct and representations to the court warrant a finding of criminal contempt, or a recommendation that the case be dismissed. The court is extremely troubled by Mr. Stolz's conduct. Indeed, at best, plaintiff's representations and testimony have been been disingenuous. At worst, plaintiff knowingly perjured himself in an attempt to avoid paying sanctions, after plaintiff knowingly disobeyed an order of the court.

At the same time, the court has not lost sight of the posture of this case. Plaintiff and his former counsel apparently had a difficult relationship, which may have exacerbated the discovery conflicts. Plaintiff also acted in pro per during the initial evidentiary hearing. The court is encouraged by the recent addition of Mr. Hamilton as plaintiff's counsel, and is hopeful that he will be able to keep this case on track. Moreover, the court has a strong desire to see this case resolved on the merits. The court is loath to recommend dismissal based on plaintiff's misconduct while acting on his own behalf. Similarly, the court determines that, at this time, the current situation does not warrant a finding of criminal contempt and monetary sanctions to the court. Plaintiff is admonished, however, that any future misconduct in this case, including a failure to comply with a court order, may result in a recommendation of dismissal or sanctions to the court.

B. <u>Amount of Sanctions</u>

For bringing and pursuing the ex parte application, Travelers seeks $18,825.71 for consultant costs and attorneys' fees, and an additional $1,458.45 in costs, for a total of $20,284.16. (ECF No. 100 at 5.) This includes the original $7,268.21 in sanctions, and is supported by a declaration and detailed accounting. (ECF No. 100-1.)

Plaintiff challenges Travelers' accounting and asserts that Travelers' request should be substantially reduced. (ECF No. 102.) First, plaintiff claims the accounting is insufficient

because Travelers failed to submit an itemized billing statement. (Id. at 2.) However, Mr. Murphy's declaration sufficiently details how much time he spent on various tasks related to Travelers' pursuit of the ex parte application. (See ECF No. 101.) To discount the hours spent simply because they are not presented on an itemized bill would needlessly elevate form over substance.

Second, plaintiff asserts that Travelers' inappropriately seeks reimbursement of the time spent on the April 18, 2019 case management conference, which included other issues in addition to the ex parte application and evidentiary hearings. (ECF No. 102 at 3.) This argument is unavailing. Travelers only seeks reimbursement for the time spent on relevant matters:

> One of the issues discussed at the April 18, 2019 case management conference was whether Plaintiff Stolz was still seeking an evidentiary hearing. Travelers is requesting 4 hours of attorneys' time at $230 per hour for the time spent for meet and confer, filing of the Joint Status Report, and appearing at the further case management conference. There were other matters unrelated to the evidentiary hearing, which occurred during the meet and confer and which were discussed at the case management conference. Travelers is not including this time and is only requesting $920 as attorneys' fees for the time spent dealing with the evidentiary hearing.

(ECF No. 100 at 2-3.)

Third, plaintiff argues that the time spent by Travelers on these issues was excessive. (See ECF No. 102 at 4-6.) The court finds plaintiff's arguments to be wholly unpersuasive. Indeed, the court finds that the hours spent and billed by Mr. Murphy are quite appropriate and reasonable.

Finally, there is no merit to plaintiff's assertion that he should not have to reimburse Travelers for the cost of ordering the transcript of the May 17, 2019 hearing. (ECF No. 102 at 6.) It is of no moment that Travelers ordered a copy of the transcript before plaintiff formally requested a second evidentiary hearing. At the first hearing, plaintiff indicated that he planned to request a second hearing, which he later did. Thus, Travelers reasonably requested the transcript in preparation of a further hearing.

////

////

IV. CONCLUSION

Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED that:

1. Defendant's January 8, 2019 ex parte application for sanctions (ECF No. 35) is GRANTED.
2. Plaintiff, as the client, is personally sanctioned in the amount of $20,284.16 for the attorneys' fees and costs incurred by Travelers' in bringing and pursuing the ex parte application.[3] The sanctions shall be paid to Travelers' counsel within fourteen (14) days of this order.
3. Failure to comply with this order may result in a recommendation that this action be dismissed.

IT IS SO ORDERED.

Dated: August 14, 2019

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

stolz.1923.order ex parte app

---

[3] Plaintiff Edward R. Stolz, II is to pay these sanctions personally, and he may not pass on any portion thereof to former or current counsel. For example, Mr. Stolz may not use these sanctions to offset any outstanding fees that he may owe Mr. Ross or the Adli Law Group.