UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD ROYCE STOLZ, II,<br><br>Plaintiff,<br><br>v.<br><br>TRAVELERS COMMERCIAL<br>INSURANCE COMPANY, et al.<br><br>Defendants. | No. 2:18-cv-1923-KJM-KJN<br><br>ORDER ON DEFENDANT'S<br>SECOND MOTION TO ENFORCE<br><br>(ECF No. 105) |

This case arises out of a claim for insurance coverage under a homeowner's policy issued by Travelers. The property is located in El Dorado Hills, California, and Plaintiff Stolz holds some property interest in it. The case has been significantly side–tracked by multiple discovery disputes, which have largely emanated from Stolz's abuse of the discovery process.

The instant dispute concerns Traveler's allegation that Stolz has failed to provide meaningful responses to interrogatories and requests for production of documents—originally served in September of 2018. (ECF No. 105.) Stolz insists he has responded as best he can, and has asserted multiple objections over the past year—including based on relevance, proportionality, and privacy grounds. (ECF No. 106.) Despite considerable guidance from the Court, Stolz's latest answers still fail to show that he has conducted a "reasonable inquiry" into the matters at issue. Thus, in order provide some final guidance, the Court orders Stolz's attorney to thoroughly analyze his client's records, as detailed below, so that Stolz can supplement within

1

21 days.

**Background**

Stolz filed this action in California state court, and on July 11, 2018, Travelers removed the action to this Court. (ECF No. 1.) In his Complaint, Stolz alleges that between December 2016 and March 2017, his house in El Dorado Hills suffered extensive damage due to severe storms and associated flooding. (Id. at ¶ 2.) Because of the damage, Stolz contends he was unable to continue living in the house. (Id. at ¶ 16.) Stolz asserts he submitted a timely claim to Travelers under the relevant Policy, but Travelers, acting in bad faith, refused to pay. (Id. at ¶ 3.) The Complaint asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unfair business practices. (Id. at ¶¶ 3–5.) For damages, the Complaint prays for, inter alia, compensatory, special and consequential damages. (Id. at p. 15.) This claim apparently includes damages for loss of use of the home, and additional living expenses, and "diminution of value" of the home—all of which are governed by the Policy. (See ECF No. 117 at ¶ 1.)

Travelers denied liability, and asserted a number of affirmative defenses, including: (3) comparative fault, (5) other causes, (6) superseding causes, and (7) failure to mitigate, as well as other Policy–based defenses (e.g. (10) "recovery [is] barred by the terms, conditions, definitions, limitations and exclusions contained in the Policy."). (ECF No. 1 at pp. 28–38.) From what the Court has gleaned, Travelers intends to argue that coverage under the Policy only extends to "the dwelling on the 'residence premises,'" which the Policy defines as "the one family dwelling where you reside . . . and which is shown as the 'residence premises' in the Declarations." (See ECF No. 105 at p. 4.) The thrust of Traveler's defense appears to be that the El Dorado property was not Stolz's "residence premises"—and was likely left abandoned for a large portion of the coverage period.[1] (See ECF No. 109 at pp. 2–4 for Traveler's summarized theory of the case.) Thus, Travelers intends to argue that it is not liable for "loss of use" damages (because Stolz was not using the El Dorado property), "additional living expense" damages (because Stolz owns

---

[1] The undersigned makes no comment as to the viability of Travelers' defenses, and is merely concerned with discoverable information relevant to these issues.

somewhere between 3–5 other properties), and "diminution of value" damages (because any reduction in the property's value was due to Stolz's negligence/absence/failure to mitigate).

To inquire into the extent of Stolz's use of the El Dorado Property, Travelers propounded discovery on September 28, 2018—seeking among other things the following information:

> [ROG] 1: Identify the address(es) of the property that YOU have resided at since January 1, 2013 to the PRESENT.
>
> [ROGS] 2/3: State, with specificity the amount of time, including but not limited to the number of days per month, YOU have resided at each property identified in response to Interrogatory Number 1/the [El Dorado] property from January 1, 2013 to the PRESENT.
>
> [ROG] 4: Identify, with specificity (by stating the name, title, address, telephone number and e-mail address), each and every PERSON who resided with YOU from January l, 2013 to the PRESENT.
>
> [RPD] 4: Any and all DOCUMENTS EVIDENCING YOUR business or personal trips taken from the January 1, 2015 to the PRESENT, including but not limited to DOCUMENTS related to airline tickets, any form of transportation, hotel receipt, and/or other housing.
>
> [RPD] 11: Any and all DOCUMENTS EVIDENCING any claim for Additional Living Expense that YOU are seeking under YOUR CLAIM and as part of YOUR COMPLAINT.

(ECF No. 106–3 and –4.) On November 2, 2018, Stolz, aided by counsel from the Adli Law Group, responded with 18–19 general objections, plus the following boilerplate objections to the above requests: "overbroad as to time [and] scope"; "not reasonably calculated to lead to the discovery of admissible evidence"; "attorney–client privilege"; "privacy"; and "unintelligible, vague, and ambiguous regarding the phrases 'the address(es) of the property' and the undefined word 'resided.'" (See ECF No. 105–5 and –6.)

On December 7, Travelers filed a motion to compel. (ECF No. 22.) On December 18, Stolz supplemented Rog 3: "[S]ince the incident . . . , [Stolz] has not resided at the PROPERTY. Prior to that, the number of days per month during which he resided at the PROPERTY fluctuated widely and cannot be stated with specificity for the time period requested." (ECF No. 106–7 at p. 7.) Additionally, Stolz stated that he was "not making a claim for Additional Living Expenses[.]" (Id. at p. 8, Rog 7 Response.) On January 11, 2019, the Court ordered Stolz's attorney to confer

3

with his client concerning the scope of Stolz's claims and requested damages, including whether he was seeking loss of use damages, then supplement his responses. (ECF No. 43.)

Between January and May, a number of events caused further delays to the case. First, Stolz's attorney requested to withdraw in January—which took effect in March. (ECF Nos. 44, 57.) Second, the Court devoted significant time to resolving a separate discovery dispute concerning Stolz's refusal to permit a site inspection.[2] (See ECF No. 104 for a thorough account of this dispute.) Third, the Court's service on Stolz (acting pro se) was often returned as undeliverable due to Stolz's failure to keep his address current. Relevant to the instant dispute, Stolz failed to supplement the Rogs and RPDs, even after Travelers personally re–served Stolz. (See ECF No. 76.) On April 19, the Court again ordered responses, due by May 9, 2019. (ECF No. 65.)

Ten days after this latest deadline, Stolz supplemented his responses to 10 of the 25 Rogs, including Rogs 1–4. (ECF No. 106–10). For his residences, Stolz listed the El Dorado house as well as a house in Sacramento and two houses in Rancho Mirage, CA (at San Marino Circle and Toscana Way). (Id. at Rog 1 Response.) Stolz stated that he considered the El Dorado property his "residence," and that up until 2017, his "best estimate is that [he] spent approximately ½ of [his] time (approximately 15 days per month) at that location." (Id. at Rog 2 Response.) He stated he has "occasionally occupied" the two Rancho Mirage houses, but despite "a diligent search for data which might identity with particularity the number of days per month each property has been occupied, Plaintiffs do not have such data." (Id. at Rog 3 Response.) Finally,

---

[2] In brief: between November and January, the parties and the Court dealt with Stolz's multiple refusals to make the home available for a site inspection. With each scheduled inspection, Stolz offered a variety of excuses as to why the property was unavailable—excuses which the Court found to be disingenuous at best. In April, Stolz (pro se) indicated to Travelers that he opposed the site inspection, and so the Court ordered Stolz to file an opposition to Traveler's motion to compel. Travelers moved for an order sanctioning Stolz for his obstruction, and the Court conducted an evidentiary hearing on the matter in May and June. Ultimately, and after Stoltz had retained new counsel, the Court sanctioned Stolz $20,284.16 and again ordered the site inspection. The Court found "at best, plaintiff's representations and testimony have been disingenuous[, and] at worst, plaintiff knowingly perjured himself in an attempt to avoid paying sanctions, after plaintiff knowingly disobeyed an order of the court [to make the property available for inspection]." (ECF No. 104.)

Stolz stated that no one else lives at the El Dorado property, and that he was not seeking additional living expenses. (Id. at Rogs 4 and 7 Responses.) On May 30, Travelers filed a motion to enforce, asserting that Stolz's Rogs supplements did not comply with the Court's order, as well as that he completely failed to supplement his RPD responses. (See ECF No. 76.)

Stolz then retained Ben Thomas Hamilton as counsel, and Mr. Hamilton appeared alongside Stolz at a June 13 hearing. (ECF Nos 81, 83.) Mr. Hamilton assured the Court he would work with his client to supplement the responses; the Court granted Stolz 21 days to comply, and ordered that Stolz waived all objections except as to privacy.[3] (ECF No. 87.)

On August 15, 2019, Travelers submitted a second motion to enforce, requesting either dismissal of the action in total or dismissal of both Stolz's breach of contract claim and any loss of use damages and additional expense damages. Therein, Travelers demonstrated that between June and August, counsel for both parties conferred extensively over Stolz's supplements to the Rogs and RPDs, and were able to resolve other issues raised by Travelers (not relevant to the instant dispute). Stolz's supplements reasserted that he resided in the two Rancho Mirage properties and the El Dorado property, but inexplicably failed to mention the Sacramento property.[4] (ECF No. 106–17, Rog 1 Response.) Stolz also reasserted that he spent 15 days per month at the El Dorado property, and added the following qualifier:

> Despite a diligent search, I do not have any records which would help me provide a more accurate estimate of time at the above-mentioned locations. My cell phone billing statements do not indicate my location in relation to cell phone calls I make or receive. I do not keep track of my location on my cell phone. I do not keep a permanent personal or business calendar. I generally keep track of appointments and events via notes made on notepads and then discard said notepads once the appointment or event has occurred or the note is no longer needed

---

[3] With Mr. Hamilton's assistance, Stolz supplemented his responses two days before the hearing. However, given that these responses were untimely, and that Stolz's substitution of attorney had not been approved, the Court did not consider the responses prior to the June 13 hearing. The Court observes that all supplements in the June 11 responses are also contained in the July 3 responses, and so for purposes of simplicity, the Court will focus on the July 3 responses only.

[4] Further, Travelers has stated that Stolz's Insurance Policy Declarations list the Toscana Way property in Ranch Mirage as his residence, and Stolz's auto policies similarly list Toscana Way as where his cars are garaged.

5

(Id. at Rogs 2 and 3 Responses.)  As to RPD 4 (re: documents evidencing Stolz's business or personal trips), Stolz stated he "[did] not have any responsive documents in [his] possession, custody or control relating to business or personal trips taken from the January 1, 2015, to the time of the incident in 2017.  Had any such records existed, they no longer exist and are not in [his] possession."  (ECF No. 106–18, RPD 4 Response.)  Stolz repeated his "despite a diligent search" assertion from Rogs 2 and 3 regarding his cell phone location and business calendar, but stated he was "in the process of locating and copying gas receipts" which he promised to produce.  (Id.)  As for RPD 11 (re: documents evidencing additional living expenses), Stolz stated he had "no responsive documents in [his] possession, custody or control."  (Id., RPD 11 Response).  Stolz did not supplement his response to Rog 7 (re: 'not seeking additional living expenses') in either the June 13 or July 3 submissions.  (See ECF Nos. 106–15 and –17.)

Travelers deposed Stolz on July 23 regarding these issues, and Stolz offered testimony that was consistent with his responses in some ways, but inconsistent in other ways.  (See ECF No. 105–6.)  For example, while Stolz has consistently stated in his Rogs that he "occasionally" resided at the San Marino Circle home, he testified at his deposition that this property has been unoccupied.  (Id. at 42:23–43:22.)  Stolz also testified that he has leased a condominium in Las Vegas, Nevada since 2017, despite never having mentioned it in his Rog responses.  (Id. at 35:7–36:14.)  He also testified that he often traveled to Northern California, Las Vegas, San Francisco, Washington D.C., and New York City in the past few years.  (Id. at 23:21–25; 58:10–20.)

Finally, from what the Court can glean from counsels' meet–and–confer emails, Stolz has delivered to Travelers his cell phone records, his gas/electric/water utility bills for the El Dorado property, and his automobile gas receipts.  (See ECF No. 106–22.)  Further, the Court notes Mr. Hamilton's assertion that in fact "Stolz is making a claim for additional living expenses under his policy."  (ECF No. 106–20 at p. 3.)  Fact discovery closed on August 5, 2019.  (ECF No. 26.)

On August 29, 2019, the Court heard arguments on Defendant's Second Motion to Enforce, as well as other discovery–related motions.[5]  (ECF No. 105.)  Travelers asserted that if

---

[5] This includes other issues raised in the Motion to Compel, as well as Defendant's Ex Parte Application re: Trust Subpoena (ECF No. 107), Plaintiff's Ex Parte Application for Extension of

Stolz disclaimed the damages for loss of use, additional living expenses, and "diminution of value," the issue of his whereabouts would become irrelevant. The Court ordered Mr. Hamilton to confer with Stolz on dropping these damages, then report back by September 3. (ECF No. 114.) The dispute over Stolz's Rog and RPD responses remains unresolved. (ECF No. 117.)

**Legal Standards – Reasonable Inquiry into Discovery Requests**

Under the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Rule 26(b). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Rule 26(b). Rule 26 also requires discovery be proportional to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id.

In responding to discovery, the Federal Rules require a "reasonable inquiry" be made into the matters hand. See Asea, Inc. v. Southern Pac. Transp. Co., 669 F.2d 1242, 1246 (9th Cir. 1981); see also Reinsdorf v. Skechers U.S.A., Inc., 296 F.R.D. 604 (C.D. Cal. 2013) ("[T]he discovery process relies upon the good faith and professional obligations of counsel to reasonably and diligently search for and produce responsive documents.") (collecting cases, and quoting Smith v. Life Investors Ins. Co. of America, 2009 WL 2045197 at *5 (W.D. Pa. July 09, 2009)). For interrogatories, this includes an obligation "to respond to the fullest extent possible . . . ." Gorrell v. Sneath, 292 F.R.D. 629 (E.D. Cal. 2013) (citing Rule 33(b)(3)). For requests for production, this includes an obligation "to produce all specified relevant and non-privileged documents, tangible things, or electronically stored information in its 'possession, custody, or

---

Time (ECF No. 112), and the oppositions thereto. The parties' reports indicate they have resolved these issues. (ECF Nos. 117, 118, 119.)

7

control' on the date specified." Id. (citing Rule 34(a)). "Control is defined as the legal right to obtain documents upon demand." U.S. Int'l Union of Petroleum and Indus. Workers, AFL–CIO, 870 F.2d 1450, 1452 (9th Cir.1989) (internal citations omitted). However, though a responding party has a duty to conduct a reasonable search, "the Federal Rules do not demand perfection." Reinsdorf, 296 F.R.D. at 615 (citing, inter alia, National Ass'n of Radiation Survivors v. Turnage, 115 F.R.D. 543, 555 (N.D. Cal. 1987) ("The reasonableness of the inquiry is measured by an objective standard . . . ."); see also Gorrell, 292 F.R.D. at 629 ("In general, a responding party is not required 'to conduct extensive research in order to answer an interrogatory, but a reasonable effort to respond must be made.'") (quoting Haney v. Saldana, 2010 WL 3341939, at *3, (E.D. Cal. Aug. 24, 2010); Uribe v. McKesson, 2010 WL 892093, at *2–3 (E.D. Cal. Mar. 9, 2010) ("[I]f no responsive documents or tangible things exist, [] the responding party should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence."). Simply, Rule 26(g) imposes "an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37." See 1983 comm. note. to Rule 26 ("[Rule 26(g)] provides a deterrent to both excessive discovery and evasion by imposing a certification requirement that obliges each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection[;] [t]his standard is heavily dependent on the circumstances of each case.").

Under Rule 37, a court may order a party to provide further responses to "an evasive or incomplete disclosure, answer, or response." See Rule 37(a)(3). "[A]n evasive or incomplete [] response must be treated as a failure to [] respond." Rule 37(a)(4). "The moving party bears the burden of demonstrating 'actual and substantial prejudice' from the denial of discovery." Gorrell, 292 F.R.D. at 633 (citing Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002)). Additionally, the court may "issue further just orders," to a party that fails to obey a discovery order, including:
> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;
(vi) rendering a default judgment against the disobedient party; or
(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Rule 37(b)(2)(A). The court may also order the payment of the moving party's reasonable expenses, including attorney's fees, caused by the errant party's failures. Rule 37(b)(2)(C).

**Parties' Arguments**

Travelers contends that despite its attempts to inquire as to where Stolz resided over the past few years, and despite the Court's numerous orders directing Stolz to supplement his responses to their interrogatories and requests for production of documents, Stolz has not provided "meaningful responses." (ECF No. 105.) Travelers contends that the information sought is relevant to whether Stolz has an insurable interest in the El Dorado property under the Policy (as they intend to argue it was not his "residence premises"), to whether he is allowed loss–of–use damages (i.e. if he abandoned the property, he has not lost use of it), and to whether he could have mitigated the loss (by observing various property conditions sooner rather than later). (Id. at p. 2.) Because Stolz has consistently failed to offer "meaningful responses," Travelers requests either an order dismissing the action in its entirety, or dismissing both his breach of contract claim and "any claim for loss of use damages," including additional living expenses. (Id. at p. 9.) Travelers also requests a sanction of $1,225 for having to file this motion. (Id.)

Stolz contends he has supplemented his responses to the best of his ability, and has provided all information and documentation in his possession; he believes Travelers is merely attempting to punish him via discovery sanctions for a perceived lack of evidence. (ECF No. 106 at pp. 1–2.) In support, Stolz argues his responses to Rogs 1–4 not only provide responses to the specific questions asked, but also give details as to why he has no records to help clarify his answers. (Id.) He also maintains his "diligent search" turned up no further documents to supplement for his response to RPD 4 (re: his business trips) and RPD 11 (re: his additional living expenses).[6] Thus, Stolz asserts he has provided "full and complete discovery responses," and that

---

[6] Travelers has also taken issue with Stolz's response to RPD 8, which they claim concerns loss

9

because he and his new counsel have acted in good faith in supplementing his responses, Travelers' request for additional sanctions should be denied.

**Analysis**

**I.     Rule 37(b) sanctions are warranted on the "additional living expenses" damages.**

Travelers served its RPD's almost a year ago, querying whether Stolz was seeking "additional living expenses." (ECF No. 106–4.) On December 7, 2018, Stolz stated that he was "not making a claim for Additional Living Expenses . . . ." (ECF No. 106–7 at p. 8, Rog 7 Response.) In May 2019, Stolz reasserted he was not seeking additional living expenses. (ECF No. 106–10 at Rog 7 Response.) To date, Stolz has not supplemented his response to this interrogatory to indicate otherwise. (See ECF No. 106–17.) In fact, the only reason Travelers was made aware of Stolz's intent to seek these damages was because Stolz's counsel mentioned it in an email sent during the meet–and–confer period. (See ECF No. 106–20 at p. 3: "Stolz is making a claim for additional living expenses under his policy.")

This about–face cannot be tolerated. Stolz had a year to inquire into whether he was seeking these damages, and he has consistently disclaimed them. Thus, any assertion to the contrary is inconsistent with the "spirit and purposes" of the discovery rules. See 1983 comm. note. to Rule 26. This result is especially so given that fact discovery has technically been closed for a month, and the parties appear ready to transition into expert discovery. (See ECF No. 117.) Thus, the prejudice to Travelers is actual and substantial. Gorrell, 292 F.R.D. at 633.

Given Stolz's flagrant abuse of the discovery process—including being responsible for the year–long delay, failing to timely supplement his responses as ordered, and waiting until after the close of fact discovery to change positions—allowing this new line of inquiry to proceed would be unjust. Thus, the Court sanctions Stolz by directing that he has no claim for "additional living expenses" for purposes of this action. Rule 37(b)(2)(A)(i); cf. Hawecker v. Sorenson, 2012 WL 2466615, at *3 (E.D. Cal. June 27, 2012) (where defendants caused five-month delay in

---

of use damages. However, this RPD concerns attorneys' fees—the Court has ignored the dispute over this particular RPD. Instead, the Court takes up Travelers' argument regarding the loss of use damages as a dispute over Stolz's diligence in answering the remaining discovery questions.

10

responding to discovery requests, pushing past the close of fact discovery, and where defendants failed to follow the court's order to respond to discovery, Rule 37(b) issue sanctions were warranted); with Silver Textile, Inc. v. D Lux Brands, 2013 WL 12138985, at *2 (C.D. Cal. Oct. 9, 2013) (monetary sanctions appropriate for discovery abuses, but not harsher sanctions, where discovery had not yet closed and the court issued specific order requiring compliance).

## II. Stolz's Counsel shall conduct a thorough review of his client's records, and Stolz shall supplement his responses to Rogs 1–3 and RPD 4 within 21 days.

As described above, the core of this dispute concerns Travelers' efforts to discover the extent of Stolz's use of the El Dorado property up through the time of the incident. (ECF No. 105.) Travelers contends that the information sought is relevant to whether Stolz has an insurable interest in the El Dorado property under the Policy (as they intend to argue it was not his "residence premises"), to whether he is allowed loss–of–use damages (i.e. if he abandoned the property, he has not lost use of it), and depending on how often he occupied the property whether he could have mitigated the loss (by observing various property conditions sooner rather than later). (Id. at p. 2.) As to the relevance of the information sought, the Court agrees with Travelers. Stolz's use of the property appears relevant to Traveler's defenses, including comparative fault, other causes, superseding causes, failure to mitigate, and other Policy–based defenses (e.g.(10) "recovery [is] barred by the terms, conditions, definitions, limitations and exclusions contained in the Policy."). (ECF No. 1 at pp. 28–38.)

As to the substance of Stolz's responses, they still fall far short. Stolz appears to believe that if he simply states he has no cell phone records, credit card statements, or business calendars, this constitutes a "reasonable inquiry," under the Federal Rules. Stolz and his counsel are sorely mistaken. The absence of one or two types of proof does not excuse Stolz from inquiring elsewhere. For example, accepting that Stolz does not use credit cards and that he "primarily use[s] cash," (ECF No. 106–1 at ¶ 21), the Court suggested that Stolz pull his bank records to examine where he made ATM withdrawals—to demonstrate whether he spent "more than half his time" in or near El Dorado Hills (or whether, as Travelers contends, he resided at the Toscana Way property in Rancho Mirage, CA—some 500 miles south—which according to Stolz's Policy

11

declarations was his "residence"). Or, even accepting that Stolz has no bank statements in hand, he can contact his bank to obtain them. U.S. Int'l Union of Petroleum, 870 F.2d at 1452 ("Control is defined as the legal right to obtain documents upon demand."). The same holds true for his airline travels to New York or D.C. (via receipts from the companies), his business trips to his radio stations (via the calendars of his subordinates or associates—especially if he maintains some ownership interest in them), or any government records showing his county of residence (tax returns, including possible business mileage deductions). See McMaster v. Spearman, 2014 WL 2712212, *8 (E.D. Cal. June 16, 2014) (remarking how "the Court lacked the requisite assurance that Defendants [] in fact made a reasonable inquiry" where defendants simply stated they could not remember a key fact but where they had not reviewed relevant documents prior to answering); Ford v. Wildey, 2014 WL 2619595 (E.D. Cal. June 6, 2014) (granting motion to compel and remarking how the defendant "cannot plausibly claim that he not aware of the names of previous lawsuits where he was named a defendant," and how he made "no specific showing of the details of the diligent search which he claims he conducted."); Gorrell, 292 F.R.D. at 637 (granting request to compel further responses to interrogatory where initial response was ambiguous); Bryant v. Armstrong, 285 F.R.D. 596 (S.D. Cal. 2012) (ordering supplemental responses to Rule 34 requests where it was not clear to the court whether the defendant "took reasonable steps under the above standards to locate relevant records.");

Further, while the Court has not at this time discredited Stolz's statements that he has no records, Stolz's history of obfuscation should give his counsel pause in deciding whether to accept his client's assertions at face value.[7] The Court appreciates that counsel appears to be

---

[7] Setting aside Stolz's behavior in the other discovery dispute (re: the site inspection), Stolz appears content to continue his pattern of offering conflicting and evasive responses to the discovery. The Court is concerned at Stolz's latest assertions in his deposition that he sometimes resides at a condo in Las Vegas (despite never having mentioned in any of his interrogatory responses), and that one of the two Rancho Mirage residences is unoccupied (despite his prior responses that he "occasionally" lives there). Further, at the hearing, Stolz's counsel asserted that Stolz has "75 boxes" of documents in a garage in one of his Rancho Mirage properties, which Stolz thought might contain trust documents (relevant to a separate dispute). Stolz's deposition testimony is in direct conflict with prior discovery responses, and the Court is puzzled by Stolz's insistence that he has no documents in his possession yet has boxes of papers in a garage. These instances should add to current counsel's suspicion of his client's answers.

attempting to work with his client to comply with the prior discovery orders, but it seems as though counsel is willing to trust too easily without himself conducting an inquiry. It is for this reason only (current counsel's efforts) that the Court is declining to provide Travelers with the more-extreme sanctions they seek. See Kipperman v. Onex Corp., 260 F.R.D. 682, 696 (N.D. Ga. 2009) (finding counsel's assertion—that she failed to turn over a requested document because she "never asked her client a question that would elicit a response"—to be "absolutely ridiculous.").

Instead, the Court orders Stolz and his counsel to conduct a more–thorough analysis of Stolz's records. This includes obtaining and reviewing:

a.) Stolz's credit report, to determine the extent of Stolz's financial relationships (credit cards, bank accounts, and other financial documents that could demonstrate Stolz's whereabouts for the relevant period);

b.) All bank account statements (and credit card statements, if the credit report shows they exist) indicating the dates and locations where Stolz has conducted his financial transactions—especially in what cities he makes cash withdrawals or where he made credit card transactions;

c.) Records from any airline companies for his flights to other cities (if he in fact flew from New York or D.C. or other cities);

d.) Stolz's cell phone billing statements to verify whether the location of Stolz's sent and received calls is noted;

e.) Documents from the various business entities in which Stolz has an interest that indicate his whereabouts for any business trips (including mileage records, business meetings, etc.); and

f.) Any other property or government records (voter registration, DMV docs) that indicate his county of residence.

Once Stolz and his counsel have conducted this review, Stolz shall supplement his responses to Rogs 1–3—detailing the amount of time Stolz spent at each residence during the relevant period, as well as his response to RPD 4—demonstrating his business and personal trips taken during the relevant period. Gorrell, 292 F.R.D. at 629 (finding that a reasonable inquiry for interrogatories includes an obligation "to respond to the fullest extent possible . . . ."); U.S. Int'l Union of

13

Petroleum, 870 F.2d at 1452 (for document production, "[c]ontrol is defined as the legal right to obtain documents upon demand."). In addition, Stolz shall detail the steps he took to secure and review this information. Stolz has 21 days to conduct this analysis with his counsel and supplement his responses—which he shall submit to both Travelers and the Court.[8] Failure to heed the Court's guidance will result in further sanctions. See Kaseburg v. Port of Seattle, 744 Fed.Appx. 356 (9th Cir. 2018) (affirming sanction by lower court prohibiting the introduction of certain matters into evidence under Rule 37, where alternative lesser sanctions had already been employed twice previously); see also Jensen v. BMW of North America, LLC, 331 F.R.D. 384, 390 (S.D. Cal. 2019) (finding it appropriate to issue a limited adverse inference instruction as to the missing documents, where the offending party failed to comply the previous orders to disclose certain documents); Sell v. Country Life Insurance Company, 189 F.Supp.3d 925 (D. Az. 2016) (finding sanctions, in the form of striking of the pleadings, warranted for untruthful deposition and evidentiary hearing testimony by party's representative and for failure of party to perform search for all relevant documents); A. Farber & Partners, Inc. v. Garber, 237 F.R.D. 250, 257–58 (C.D. Cal. 2006) (exercising discretion to allow non–compliant party to make reasonable inquiry into discovery requests instead of deeming the issues admitted, then allowing party to supplement the responses and detail the reasonable inquiry made). National Ass'n of Radiation Survivors v. Turnage, 115 F.R.D. 543 (N.D. Cal. 1987) (variety of discovery sanctions approved for discovery abuses, including appointment of a special master to conduct discovery—at the offending party's expense). Additionally, the Court sanctions Stolz $1,225 in attorneys' fees under Rule 37(b)(2)(C), payable to Travelers' Counsel.

Finally, the Court addresses a concern raised by Stolz's counsel at the hearing as to the proportionality of the Court's solution. See Rule 26(b) (discovery is to be proportional to the needs of the case, "considering the importance of the issues at stake in the action, the amount in

---

[8] Should Stolz wish to protect his privacy, he may apply for (or stipulate with Travelers to) a protective order as between the parties (including attorneys' eyes only, if necessary for certain documents), and may request that the documents not be submitted to the Court on the public docket. These documents should be provided in an unredacted format, as Stolz has a history of liberally redacting prior discovery responses.

14

controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."). The Court understands counsel's concern, and in any other situation might agree that requiring this level of investigation is disproportionate to the needs of the case. However, the Court sees no other avenue to make Stolz comply with the Court's discovery orders, and no other way to impart upon Stolz (and counsel) how near he is to issue–dispositive sanctions. Where Stolz resided appears to be an issue central to Traveler's defense on these damages claims, and the information sought is of the kind more accessible to Stolz than anyone else. The damages for "loss of use" and "diminution of value" appear to be a significant portion of Stolz's potential recovery, and while burdensome, the Court's hope is that counsel's oversight can bring about the benefit of ending—finally—this year–long discovery dispute. Thus, the Court contends its current order is exactly proportional to the needs of the case, given Stolz's intransigence over the past year. As once observed by Justice Gorsuch, then at the Tenth Circuit Court of Appeals, "[d]iscovery is not supposed to be a shell game, where the hidden ball is moved round and round and only revealed after so many false guesses are made and so much money is squandered." Lee v. Max Intern., LLC, 638 F.3d 1318, 1322 (10th Cir. 2011).

**ORDER**

Accordingly:

1. Defendant's second motion to enforce (ECF No. 105) is GRANTED IN PART;
2. Within 21 days of service of this Order:
    a. Stolz and his counsel are to conduct a thorough review of Stolz's records, as described in this Order;
    b. Once Stolz and his counsel have conducted this review, Stolz (i) shall supplement his responses to Travelers' Set One Interrogatories, No's 1–3, and Set One Request for Production of Documents No. 4, (ii) shall detail the steps taken to secure and review the necessary information, and (iii) shall submit to both Travelers and the Court his supplemental responses, which shall include details of the steps taken to conduct this reasonable inquiry;

15

       c.  Stolz shall pay Travelers' Counsel $1,225 in attorney fees;

3. Stolz is barred from seeking "additional living expenses" damages in this action; and

4. Traveler's request for issue or terminating sanctions is DENIED WITHOUT PREJUDICE, but Stolz's failure to follow the instructions in this Order will result in more–severe discovery sanctions.

IT IS SO ORDERED.

Dated: September 12, 2019

*[signature]*
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Stol.1923