1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   EDWARD ROYCE STOLZ, II,                    No. 2:18-cv-1923-KJM-KJN

12              Plaintiff,                       FINAL FINDINGS AND
                                                 RECOMMENDATIONS ON DEFENDANT'S
13        v.                                     SECOND MOTION TO ENFORCE

14   TRAVELERS COMMERCIAL                        (ECF Nos. 105, 159, 160)
     INSURANCE COMPANY, et al.
15
                Defendants.
16

17          This case arises out of a claim for insurance coverage under a homeowner's policy issued

18   by Travelers Commercial Insurance Company ("Travelers").  The house is located in El Dorado

19   Hills, California, and plaintiff Edward Royce Stolz, II ("Stolz") holds some property interest in it.

20   The case has been significantly side-tracked by the withdrawal of two of Stolz's attorneys—each

21   citing their ethical duty of candor to the court as one of their reasons to withdraw, as well as

22   multiple discovery disputes—which have largely emanated from Stolz's abuse of the discovery

23   process.

24          The court now takes up Travelers's second motion to enforce.  (ECF Nos. 105, 158, 162.)

25   Travelers alleges Stolz has consistently failed to provide meaningful responses to three

26   interrogatories and one document request—originally served in September of 2018.  (Id.)  Stolz

27   insists he has responded as best he can, and has asserted multiple objections over the past year

28   and a half—including on the grounds of relevance, proportionality, and privacy.  (ECF No. 106,

                                                1

1  160.)  The undersigned recommends Travelers's motion to enforce be granted in part.

2  **Background**

3  Stolz originally filed this action in California state court, and on July 11, 2018, Travelers

4  removed the case to this court.  (ECF No. 1.)  In his Complaint, Stolz alleges that between

5  December 2016 and March 2017, his house in El Dorado Hills suffered extensive damage due to

6  severe storms and associated flooding.  (ECF No. 1-1 at ¶ 2.)  Because of the damage, Stolz

7  contends he was unable to continue living in the house.  (Id. at ¶ 16.)  Stolz asserts he submitted a

8  timely claim to Travelers under his Policy, but contends Travelers, acting in bad faith, refused to

9  pay.  (Id. at ¶ 3.)  Stolz asserts claims for breach of contract, breach of the implied covenant of

10  good faith and fair dealing, and unfair business practices.  (Id. at ¶¶ 3–5.)  The Complaint prays

11  for, among other things, compensatory, special, and consequential damages.  (Id. at 15.)  These

12  damages apparently include loss of use of the home, loss of rents, additional living expenses, and

13  "diminution of value" of the home—all of which are governed by the Policy.  (See ECF No. 117

14  at ¶ 1.)

15  Travelers denied liability, and asserted a number of affirmative defenses, including:

16  (3) comparative fault, (5) other causes, (6) superseding causes, and (7) failure to mitigate, as well

17  as other Policy–based defenses (e.g. (10) "recovery [is] barred by the terms, conditions,

18  definitions, limitations and exclusions contained in the Policy.").  (ECF No. 1-1 at 28-38.)  The

19  thrust of Travelers's defense is that coverage under the Policy only extends to "the dwelling on

20  the 'residence premises,'" which the Policy defines as "the one family dwelling where you reside

21  . . . and which is shown as the 'residence premises' in the Declarations."  (See ECF No. 160 at

22  ¶ 5.)  Travelers asserts it intends to argue that the El Dorado Property was not Stolz's "residence

23  premises," and was likely left abandoned for a substantial portion of the coverage period.[1]  (See

24  id.)  Thus, Travelers intends to argue that it is not liable for "loss of use" damages (because Stolz

25  was not using the El Dorado property), "additional living expense" damages (because Stolz has

26  access to 3-5 other houses), "diminution of value" damages (because any reduction in the

27  _____

28  [1] The undersigned makes no comment on the viability of the claims and defenses, as the dispute before the court merely concerns discoverable information relevant to these issues.

property's value was due to Stolz's negligence/abandonment/failure to mitigate), or "fair rent value" (as Stolz had not been renting the Property).  (Id. at ¶¶ 5-6.)

To inquire into the extent of Stolz's use of the El Dorado Property, Travelers propounded discovery on September 28, 2018—seeking among other things responses to the following:

> Interrogatory 1: Identify the address(es) of the property that YOU have resided at since January 1, 2013 to the PRESENT.
>
> Interrogatory 2: State, with specificity the amount of time, including but not limited to the number of days per month, YOU have resided at each property identified in response to Interrogatory Number 1 from January 1, 2013 to the PRESENT.
>
> Interrogatory 3: State, with specificity the amount of time, including but not limited to the number of days per month, YOU have resided at the [El Dorado] PROPERTY from January 1, 2013 to the PRESENT.
>
> Request for Production 4: Any and all DOCUMENTS EVIDENCING YOUR business or personal trips taken from the January 1, 2015 to the PRESENT, including but not limited to DOCUMENTS related to airline tickets, any form of transportation, hotel receipt, and/or other housing.

(ECF No. 106-3 at 5 and 106-4 at 6 (the "Residence Questions").)  Travelers also requested information and documents regarding any "Additional Living Expenses" claims that Stolz was seeking.  (See id. at Interrogatory 7 and Requests for Production 11 and 12.)

On November 2, 2019, Stolz, aided by counsel from the Adli Law Group, responded with 18–19 general objections, plus the following boilerplate objections to almost all of Travelers's requests:  "overbroad as to time [and] scope"; "not reasonably calculated to lead to the discovery of admissible evidence"; "attorney–client privilege"; "privacy"; and "unintelligible, vague, and ambiguous regarding the phrases 'the address(es) of the property' and the undefined word 'resided.'"  (See ECF No. 106-5 and 106-6.)  Travelers then filed a motion to compel.  (ECF No. 22.)  On December 18, Stolz supplemented his response to the Residence Questions as follows:

> Response to Interrogatory 3:
>
> [S]ince the incident . . . , [Stolz] has not resided at the [El Dorado] PROPERTY.  Prior to that, the number of days per month during which he resided at the [El Dorado] PROPERTY fluctuated widely and cannot be stated with specificity for the time period requested."

3

1    (ECF No. 106–7 at 5.)  Additionally, Stolz stated that he was "not making a claim for Additional

2    Living Expenses[.]"  (Id. at 6, Interrogatory 7 Response.)

3        On January 11, 2019, the court ordered Stolz's attorney to confer with his client on

4    multiple issues—including whether he was seeking the damages at issue here—then supplement

5    his responses to Travelers's discovery requests.  (ECF No. 43.)  However, a number of events in

6    the next four months caused further delays to the case.  First, Stolz's attorney requested leave to

7    withdrawal in January, maintaining that Stolz had "failed to cooperate in the prosecution of his

8    own case," and that if representation continued, it would require the attorney to violate his ethical

9    duty of candor toward the tribunal.  The withdrawal took effect in March.  (ECF Nos. 44, 57.)

10   Second, the court devoted significant time to resolving a separate discovery dispute concerning

11   Stolz's refusal to facilitate a site inspection.  (See ECF No. 104 for a thorough account of this

12   dispute.[2])  Third, the court's service on Stolz (acting pro se) often returned as undeliverable, due

13   to Stolz's failure to keep his address current.  Relevant here, Stolz failed to supplement his

14   discovery responses, despite Travelers re-service of the requests.  (See ECF No. 76.)  On April

15   19, the court again ordered responses, due by May 9, 2019.  (ECF No. 65.)

16       Ten days after that deadline, Stolz supplemented his responses to outstanding discovery.

17   (ECF No. 106-10.)  He responded to the Residence Questions as follows:

18       Supplemental Response to Interrogatory 1:

19

20       [] Patterson Way, El Dorado Hills CA [the El Dorado Property];
     [] Robertson Avenue, Sacramento, CA;
21       [] San Marino Circle, Rancho Mirage, CA;
     [] Toscana Way, Rancho Mirage, CA.

22   _____

[2] In brief: between November and January, the parties quarreled over Stolz's refusal to make the
23   Property available for a site inspection.  With each scheduled inspection, Stolz offered a variety
     of excuses as to why the Property was unavailable.  In April 2019, Stolz (pro se) indicated to
24   Travelers that he opposed the site inspection, and so the court ordered Stolz to file a formal
     opposition to Travelers's motion to compel.  Travelers then moved to have Stolz sanctioned for
25   his alleged obstruction, and in May and June, the court conducted evidentiary hearings on the
     matter.  In July of 2019, the court sanctioned Stolz $20,284.16 and ordered the site inspection to
26   proceed.  The court found "at best, plaintiff's representations and testimony have been
     disingenuous[, and] at worst, plaintiff knowingly perjured himself in an attempt to avoid paying
27   sanctions, after plaintiff knowingly disobeyed an order of the court [to make the property
     available for inspection]."  (ECF No. 104.)

28

                                        4

1     <u>Supplemental Response to Interrogatory 2</u>:

2
      . . . Stolz resided at [the El Dorado Property] approximately half
3     each month between 2013 and 2017. Since 2017, the home has not
      been occupied as it is uninhabitable.
4     Since 2013, [Robertson] has been occupied infrequently.
      From 2013-2017, [San Marino Circle and Toscana Way] have been
5     occupied occasionally, and occupancy has increased since 2017.

6     <u>Supplemental Response to Interrogatory 3</u>:

7
      [Stolz] has conducted a diligent search for data which might
8     identity, with particularity, the number of days per month each
      property has been occupied.  [Stolz does] not have such data."
9

10    (<u>Id.</u> at 3.)  Additionally, Stolz again disclaimed additional living expenses.  (ECF No. 106-11 at

11    3.)  Stolz also filed a declaration concerning the Property that, for the first time, mentioned the

12    Ravenswood Trust—in which Stolz was purportedly a successor trustee.[3]  (ECF No. 68.)

13          On May 30, Travelers filed a motion to enforce, asserting that Stolz's interrogatory

14    supplements did not comply with the court's order, and that Stolz completely failed to supplement

15    his responses to the outstanding requests for production.  (<u>See</u> ECF No. 76.)  Travelers set the

16    motion for a June 13, 2019 hearing.  (<u>Id.</u>)  The court noted Stolz's failure to respond to

17    Travelers's motion, ordered him to appear in person at the hearing, and served this notice on each

18    of Stolz's residences.  (ECF No. 77.)  In the days before the hearing, attorney Ben Thomas

19    Hamilton filed a substitution of attorney on behalf of Stolz, as well as an untimely response to

20    Travelers's motion to enforce.[4]  (ECF Nos. 81, 82.)  Mr. Hamilton appeared alongside Stolz at the

21    hearing, and assured the court he would work with his client to supplement the responses.  (<u>See</u>

22    ECF No. 84.)  The court ordered the parties to confer on Stolz's outstanding discovery requests,

23    ordered Stolz to respond within 21 days, and ordered that Stolz had waived all objections to these

24    _____

25    [3] Recognizing that Stolz was asserting that the Ravenswood Trust held some interest in the
      Property, the parties spent additional time in the latter half of 2019 disputing whether the trust
26    documents were discoverable.  (<u>See, e.g.</u>, ECF Nos. 107, 111, 117 at ¶ 2.)

27    [4] With Mr. Hamilton's assistance, Stolz supplemented his responses two days before the hearing.
      However, given that these responses were untimely, and that Stolz's substitution of attorney had
28    not been approved, the court did not consider the responses prior to the June 13 hearing.

responses except as to privacy.  (ECF No. 87.)  The court also sanctioned Stolz personally,

ordering him to pay Travelers's attorneys' fees for having to bring the motion to enforce.  (Id.)

In July 2019, the court reset the discovery deadlines in this case, ordering expert witness

disclosure by mid-August 2019, fact-discovery by September 4, rebuttal experts by September 9,

and expert discovery closure by October 7.  (ECF No. 98.)

On August 15, 2019, Travelers submitted a second motion to enforce, requesting either

dismissal of the action in total, or dismissal of both Stolz's breach of contract claim and any loss

of use damages and additional expense damages.  (ECF No. 105.)  Therein, Travelers noted that

between June and August, counsel for both parties conferred extensively over Stolz's

supplemental responses, and were able to resolve many of the outstanding discovery disputes.  As

to the Residence Questions, Stolz delivered to Travelers his cell phone records, certain utility bills

for the El Dorado Property, and his automobile gas receipts.  (See ECF No. 106–22.)  However,

Travelers maintained Stolz's supplements were still deficient.  Stolz stated:

> Further Supplemental Response to Interrogatory 1:
>
> I have lived at the following properties since January 1, 2013:
> [] Patterson Way, El Dorado Hills CA [the El Dorado PROPERTY];
> [] San Marino Circle, Rancho Mirage, CA;
> [] Toscana Way, Rancho Mirage, CA.
>
>
> Supplemental Response to Interrogatory 2:
>
> [El Dorado Hills] was the property that I considered my residence
> up until the incident in 2017 . . . . My best estimate is that I spent
> approximately ½ of my time (approximately 15 days per month) at
> that location. I have not resided in that home since 2017 as it was
> rendered uninhabitable by the incident in 2017.
> [Toscana Way]: I do not consider this my primary residence;
> however, I have occasionally occupied this property since 2017.
> Despite a diligent search, I do not have any records which would
> help me provide a more accurate estimate of time at this particular
> location; and
> [San Marino Circle]: I have occasionally occupied this property
> since 2017. Since 2017, my occupancy of this property has
> increased because of my inability to reside [in El Dorado Hills].
> Despite a diligent search, I do not have any records which would
> help me provide a more accurate estimate of time at the above-
> mentioned locations. My cell phone billing statements do not
> indicate my location in relation to cell phone calls I make or
> receive. I do not keep track of my location on my cell phone. I do

6

not keep a permanent personal or business calendar. I generally keep track of appointments and events via notes made on notepads and then discard said notepads once the appointment or event has occurred or the note is no longer needed.

Supplemental Response to Interrogatory 3:

[same as supplemental response to interrogatory 2].

Additional Response to [Document] Request No. 4:

I do not have any responsive documents in my possession, custody or control relating to business or personal trips taken from the January 1, 2015 to the time of the incident in 2017.  Had any such records existed, they no longer exist and are not in my possession. Despite a diligent search, I do not have any records which would help me provide a more accurate estimate of business and personal trips taken from the January 1, 2015 to the time of the incident in 2017. My cell phone billing statements do not indicate my location in relation to cell phone calls I make or receive. I do not keep track of my location on my cell phone. I do not keep a personal or business calendar. I generally keep track of appointments and events via notes made on scraps of paper and then throw said notes away once the appointment or event has occurred or the note is no longer needed. I am in the process of locating and copying gas receipts which I will produce in response to this request [*these were turned over shortly after*].  I have not lived in the subject property at any time since the incident in 2017 as it has been uninhabitable.

(ECF No. 106-17 and -18 (court comments included).)  Travelers noted these responses were inconsistent with testimony he gave at the summer 2019 deposition and prior written responses. (See ECF No. 105.)  For example, Stolz's response inexplicably failed to mention the Robertson property as well as a property in Las Vegas, which Stolz identified in his summer 2019 deposition.  (See id.)  Travelers also noted Stolz's equivocation as to whether he was seeking additional living expenses.  (See id.)  Stolz responded, aided by Mr. Hamilton, stating that he had responded to the best of his abilities, and arguing that Travelers's motion was an attempt to punish him for not keeping better records.  (ECF No. 106.)

On August 29, 2019, the court held another hearing to discuss the Residence Questions (and other issues) with counsel.  (ECF No. 115.)  The court informed Mr. Hamilton he had not conducted a thorough-enough "reasonable inquiry," as required by Rule 26(g).  Mr. Hamilton objected to the court's proposed inquiry as disproportionate to the needs of the case.  The court

7

1   overruled the objection, noting that the documents Stolz provided were non-responsive, and so a

2   more-exhaustive review on Mr. Hamilton's part was required.  (See transcript of hearing, at ECF

3   No. 120.)  As a compromise, Travelers proposed dropping the dispute over the Residence

4   Questions if Stolz agreed to drop his loss of use, additional living expenses, and diminution of

5   value claims; Mr. Hamilton indicated his client may be agreeable to such a stipulation.  (ECF No.

6   114 at ¶ 1.)  Thus, the court ordered the parties to confer and file a joint response.  (Id.)

7       The following week, Stolz rejected Travelers's compromise, and reasserted his damages

8   claims for diminution of value and loss of use; he also asserted that he intended to seek additional

9   living expenses.  (ECF Nos. 117 at ¶ 1, 118.)  Thus, on September 12, 2019, the court made

10   findings and ordered the following:

11

12   1.   Stolz would be foreclosed from seeking additional living expenses as a
        Rule 37 sanction, given that discovery had closed and Stolz consistently
13        disclaimed those damages over the past year (as contrary to his recent
        statement that he was in fact seeking those damages).
14

15   2.   Mr. Hamilton's review of Stolz's limited records, and his acceptance of
        his client's assertion that he has no records, did not satisfy Rule 26(g)'s
16        "reasonable inquiry" standard.  Thus, Mr. Hamilton would be required to
        investigate this issue more thoroughly.  The court suggested Mr. Hamilton
17        might review where Stolz made his cash withdrawals, if he used any credit
        cards in areas near the Property, which airports he used when flying
18        (either personally or for work), and what he told various government
        agencies about his official residence.  (The "Reasonable Inquiry.")
19

20   (ECF No. 121.)  After Mr. Hamilton conducted his Reasonable Inquiry, Stolz was to resubmit his

21   responses to Interrogatories 1-3 and Request 4.  (Id.)  Stolz was also ordered to pay Travelers's

22   attorneys' fees for having to bring the second motion to enforce.  (Id.)

23       The Reasonable Inquiry was not completed, however, as two weeks later Mr. Hamilton

24   moved to withdraw, and the court stayed discovery.  (ECF No. 122, 128.)  In his withdrawal

25   declaration, Mr. Hamilton stated that if he were to continue representing Stolz, it would result in

26   numerous ethical violations, including "candor towards tribunals."  (ECF No. 122-2 at ¶ 7.)  Mr.

27   Hamilton was allowed to withdraw, and soon after he filed a declaration that he had returned

28   Stolz's client file to him—much of which was in digital format.  (ECF Nos. 134, 137.)

1    The court then set a status conference for January 16, 2020, to discuss resuming

2  discovery.  (ECF No. 135.)  The parties filed a joint statement three days prior, wherein Stolz

3  stated he was unaware of the status of the document review regarding the Residence Questions.

4  (ECF No. 138.)  At the hearing, Stolz, now acting pro se, maintained that he had not received all

5  of his documents from Mr. Hamilton—contrary to his former counsel's declaration.  (ECF No.

6  140.)  The court ordered Stolz to get the documents, conduct the Reasonable Inquiry (as per the

7  September 12, 2019 Order), and supplement his responses by the end of January.  (Id.)

8    On February 3, 2020 counsel for Travelers filed a declaration with the court.  (ECF No.

9  143.)  The declaration stated Stolz asserted he had not received a thumb drive from Mr. Hamilton,

10  and had just obtained his bankers boxes of documents—which Stolz maintained were missing

11  some documents; Stolz also stated he was close to obtaining new counsel, and would defer to this

12  new attorney on responding to discovery.  (Id.)  Because Stolz had not supplemented his

13  responses, or conducted the required review, Travelers renewed its second motion to enforce the

14  court order, and requested issue-dispositive sanctions.  (Id.)  The court ordered Stolz to file his

15  opposition by February 14, 2020.  (ECF No. 145.)  However, on February 12, Attorney Craig E.

16  Farmer filed a substitution of attorney.  (ECF Nos. 146, 147.)  The court set another status

17  conference with new counsel for March 6, and ordered a joint statement be submitted the day

18  prior.  (ECF No. 149.)

19    In the joint statement, Travelers reasserted its intent to seek issue-dispositive sanctions,

20  and Mr. Farmer requested additional time to conduct the Reasonable Inquiry.  (ECF No. 150.)  At

21  the hearing, the court informed Mr. Farmer that he would be granted additional time, but that he

22  was bound to conduct the same inquiry as was required for Mr. Hamilton.  (See ECF No. 157.)

23  The court ordered Mr. Farmer to file a declaration after Stolz's responses were delivered to

24  Travelers, and ordered counsel for Travelers to file a responsive declaration indicating whether

25  Stolz's latest supplemental responses resolved the Residence Questions.  (See ECF No. 155.)

26    On March 20, 2020, Mr. Farmer submitted his declaration detailing his communications

27  with Stolz (and Stolz's associates), as well as his review of Stolz's records and supplemental

28  responses.  (ECF No. 159.)  Mr. Farmer stated:

3. I have reviewed Mr. Stolz' credit report . . . , which in fact shows no credit card activities or accounts. In addition, . . . the [bank account] statements do not reflect checking account transactions and so may be of no real assistance in evaluating his residency . . . . However, I am producing these to Travelers.

4. Stolz' cell phone records . . . do not indicate his location at the time calls were made or received. These may neither support nor contradict Mr. Stolz' prior statements of the estimated time per month he typically spent at the El Dorado Property prior to the loss date. Nevertheless, I am supplementing the cell phone production.

5. I have also been able to collect a few other items which I am producing that may or may not support Stolz' contention regarding his presence in the greater Sacramento area.

6. I am also providing . . . a brief summary of information we have found concerning dates of flights to the East Coast . . . .

(Id.) Travelers then renewed its motion to enforce, and Stolz opposed. (ECF Nos. 160, 162.) The court ordered the parties to submit documents for an in-camera review. (ECF No. 161.)

**Legal Standards –Discovery Requests, Responses, Reasonable Inquiry, Sanctions**

Under the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Rule 26(b).[5] Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Rule 26(b). Additionally, discovery must be proportional to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id.

In propounding or responding to discovery, the Federal Rules require an attorney or unrepresented responding-party to certify, "to the best of the person's knowledge, information, and belief formed after a reasonable inquiry," that the request or response is:

[5] Citation to the "Rule(s)" are to the Federal Rules of Civil Procedure, unless otherwise noted.

(i) consistent with [the] rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;

(ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and

(iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

Rule 26(g)(1)(b); see also Reinsdorf v. Skechers U.S.A., Inc., 296 F.R.D. 604 (C.D. Cal. 2013) ("[T]he discovery process relies upon the good faith and professional obligations of counsel to reasonably and diligently search for and produce responsive documents.") (collecting cases). However, "the Federal Rules do not demand perfection." Id. at 615 (citing, inter alia, National Ass'n of Radiation Survivors v. Turnage, 115 F.R.D. 543, 555 (N.D. Cal. 1987) ("The reasonableness of the inquiry is measured by an objective standard . . . ."). "[I]f no responsive documents or tangible things exist, [] the responding party should so state with sufficient specificity to allow the court to determine whether the party made a reasonable inquiry and exercised due diligence." Uribe v. McKesson, 2010 WL 892093, at *2–3 (E.D. Cal. Mar. 9, 2010). "In general, a responding party is not required 'to conduct extensive research in order to answer an interrogatory, *but a reasonable effort to respond must be made*.'" Gorrell v. Sneath, 292 F.R.D. 629 (E.D. Cal. 2013) (emphasis added) (quoting Haney v. Saldana, 2010 WL 3341939, at *3, (E.D. Cal. Aug. 24, 2010). Simply, Rule 26(g) imposes "an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37." Rule 26(g), 1983 comm. note ("[Rule 26(g)] provides a deterrent to both excessive discovery and evasion by imposing a certification requirement that obliges each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection[;] [t]his standard is heavily dependent on the circumstances of each case.").

In addition to this "reasonable inquiry," a party responding to interrogatories "is obligated to respond to the fullest extent possible, and any objections must be stated with specificity." Gorrell, 292 F.R.D. at 632 (citing Rule 33(b)(3)-(4)). Responses to requests for production

require the responding party "to produce all specified relevant and non-privileged documents, tangible things, or electronically stored information in its 'possession, custody, or control' on the date specified." Id. (citing Rule 34(a)).  Actual possession, custody or control is not required; thus the party "may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document."  Id. (citing Soto v. City of Concord, 162 F.R.D. 603, 620 (N.D. Cal. 1995) and Rule 34(a)).  "Control is defined as the legal right to obtain documents upon demand." U.S. Int'l Union of Petroleum and Indus. Workers, AFL–CIO, 870 F.2d 1450, 1452 (9th Cir. 1989) (internal citations omitted).

Under Rule 37, a court may order further responses if a responding party fails to answer an interrogatory or to produce documents.  See Rule 37(a)(3)(B).  "[A]n evasive or incomplete [] response must be treated as a failure to [] respond."  Rule 37(a)(4).  "The moving party bears the burden of demonstrating 'actual and substantial prejudice' from the denial of discovery."  Gorrell, 292 F.R.D. at 633 (citing Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002)).  Additionally, the court may "issue further just orders," if the party fails to obey the discovery order, including:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Rule 37(b)(2)(A).  Further, the court must order an abusive party to pay the moving party's reasonable expenses, including attorneys' fees, regarding the discovery abuse.  Rule 37(b)(2)(C).

### **Parties' Arguments**

Travelers has consistently maintained that despite its attempts to inquire as to where Stolz resided prior to the winter of 2017, and despite the court's numerous orders directing Stolz to supplement his responses to the Residence Questions, Stolz has not responded in a meaningful fashion.  (See ECF Nos. 105, 160.)  Travelers contends:

I.   Stolz's disclaiming of damages for additional living expenses and failure to claim loss of rents over the first year and a half of the case should bar any subsequent attempt to seek those damages;

II.  Stolz's responses to Interrogatory 1 have been inconsistent and evasive; his response to Interrogatories 2 and 3—his simple estimation that he "spent approximately ½ of [his] time (approximately 15 days per month)" at the El Dorado Property—is vague, incomplete, and inconsistent; and his document production for Request for Production 4 has been non-responsive or, at best, evasive.  These non-responses impede Travelers's ability to calculate damages for loss of use or diminution of the Property's value due to the winter 2017 storms (which would be lessened or negated if Stolz failed to mitigate any earlier damage to the Property or had left the property abandoned).

Thus, Travelers requests an order sanctioning Stolz.  Travelers requests that Stolz's damages claims for loss of use, diminution of value, additional living expenses, and loss of rents be dismissed.  (ECF No. 105 at 9; 160 at ¶ 43.)

Counsel for Stolz asserted that he conducted a review of Stolz's documents in order to assist his client in supplementing responses to the Residence Questions, as called for in the court's September 12, 2019 order.[6]  (ECF Nos. 159 at ¶¶ 2-6; 161 at ¶ 11.)  Specifically:

I.   As to additional living expenses, Stolz argued he did not disclaim these damages per se.  Instead, he had previously informed Travelers he was not seeking them "at that time," but that he might amend his answer in the future.[7]  (ECF No. 106 at 9.)

II.  For the responses to Interrogatories 1-3, Stolz argues that he has, in fact, "explained in the discovery process where he has resided."  (ECF No. 159 at ¶ 12.)  Counsel states he conducted a reasonable inquiry under Rule

---

[6] After Travelers renewed its second motion to enforce, Stolz's counsel submitted a counter-declaration in opposition.  (ECF No. 162.)  Travelers correctly notes the court did not grant Stolz leave to submit this declaration, and so requests the court strike the submission from the record. (ECF No. 162.)  However, since the time Travelers originally moved to enforce, Stolz retained and lost one attorney, then retained his current counsel.  Stolz's prior counsel never officially opposed the motion to enforce, as the parties appeared open to resolving the issue informally. Thus, the court believes due process would not be satisfied if Stolz was not given an opportunity to oppose Travelers's motion on the merits.  Given this, and given that the court intended to order opposition, Travelers's motion to strike Stolz's counsel's declaration in opposition is denied.

[7] This issue was not addressed in the most recent declarations, as the court had previously found Stolz's prior responses had foreclosed his ability to seek those damages.  (See ECF No. 121 at Section I.)  These findings, however, were never formally submitted to the district judge, and so will be repeated below—alongside the court's formal recommendation.

1  26(g) by reviewing many of Stolz's documents, and detailing his process
2  by declaration.  (See id. at ¶¶ 1-7; 162 at ¶¶ 10-12.)  For the response to
   document production 4, Stolz maintains he has submitted his gas receipts,
3  as well as a "brief summary of information we have found concerning
   dates of flights to the East Coast." (ECF Nos. 159 at ¶ 6; 162 at ¶ 11.)

4  In sum, Stolz has consistently contended he has supplemented his responses to the best of his

5  ability, and has provided all information and documentation he has; he believes Travelers is

6  merely attempting to punish him via discovery sanctions for a perceived lack of evidence.  (See

7  ECF No. 106 at 1-2.)  Stolz further argues that Travelers is not without evidence of his

8  whereabouts, or of the state of the Property, prior to the winter of 2017, and implicitly argues that

9  the issue of damages is one for summary judgment or trial—not for resolution as a discovery

10 sanction.  (ECF No. 162 at ¶¶ 3, 6-13.)  Finally, Counsel for Stolz states that given the current

11 "shelter at home" order, he will supplement documents if any become available.  (Id. at ¶ 5.)

12 **Analysis**

13
14 **I.      Rule 37(b) sanctions are warranted on "additional living expenses" damages, and
          to the extent Stolz attempts to seek loss of rents, these damages are barred.**

15      In September of 2019, the court found that Stolz's about face on his intent to seek

16 damages for additional living expenses "cannot be tolerated."  (ECF No. 121 at Section I.)  The

17 undersigned found that sanctions were appropriate as to this set of damages, and informed the

18 parties as much.  (Id.)  However, the court never formally submitted these findings to the assigned

19 district judge, as there remained multiple other areas of dispute.  Thus, the court now repeats its

20 findings, and formally enters a recommendation for the district court's consideration.

21 Maisonville v. F2 Am., Inc., 902 F.2d 746, 747 (9th Cir. 1990) ("[T]he magistrate's jurisdiction to

22 order sanctions, rather than recommend sanctions to the district court, is dependent upon whether

23 . . . sanctions are characterized as dispositive or non-dispositive of a claim or defense of a party.")

24 see also Grimes v. City & Cty. of San Francisco, 951 F.2d 236, 240 (9th Cir. 1991) (analyzing a

25 magistrate judge's authority to enter sanctions under Rule 37, and counseling the magistrate judge

26 to "confine herself to entering a recommendation for the disposition of the [dispositive] matter.")

27      In September 2018, Travelers queried whether Stolz was seeking "additional living

28 expenses."  (ECF No. 106-4.)  On December 7, 2018, Stolz gave a qualified response that he was

14

1   "not making a claim for Additional Living Expenses . . . ."  (ECF No. 106-7 at 8, Response to

2   Interrogatory 7.)  In May 2019, Stolz plainly stated he was not seeking additional living expenses.

3   (ECF No. 106-11 at 3, Supplemental Response to Interrogatory 7.)  However, in September 2019,

4   Stolz notified Travelers in an email (and corresponding court filing) that he intended to seek

5   additional living expenses.  (See ECF No. 106-20 at 3:  "Stolz is making a claim for additional

6   living expenses under his policy."; see also ECF No. 118 at 2.)

7          As the court informed Stolz in September of 2019, this about–face cannot be tolerated.

8   Stolz had a year to consider whether to seek these damages, but he disclaimed them at every turn.

9   His assertion that he was "continuing" to seek those damages is inconsistent with the spirit and

10  purposes of the discovery rules.  See 1983 comm. note. to Rule 26.  This result is especially so

11  given that fact that, on the day Stolz filed his notice with the court claiming he was requesting

12  those damages, fact discovery closed.  (See ECF No. 117.)  Travelers has adequately

13  demonstrated 'actual and substantial' prejudice to Stolz's failures, as it cannot now conduct

14  further discovery on this set of damages.  See Payne v. Exxon Corp., 121 F.3d 503, 508 (9th

15  Cir.1997) ("Many of the discovery responses eventually tendered by the plaintiffs came only as

16  the discovery period was drawing to a close, or after it had already closed. [Defendants] were

17  therefore deprived of any meaningful opportunity to follow up on that information, or to

18  incorporate it into their litigation strategy.").

19         Further, Travelers recently began arguing that Stolz should be barred from seeking

20  damages for any loss of rents, as under the Policy.  The court finds no reference in any of Stolz's

21  discovery responses that he is in fact seeking compensation for any loss of rents, and thus,

22  Travelers's request appears inapposite.  (See ECF No. 106-18 at 5-6, Response to Request 12,

23  indicating Stolz has no documents evincing a lease or rental agreement.)  However, given Stolz's

24  previous history of offering equivocal and evasive answers in discovery, (most notably his

25  answers to the additional-living-expenses question), the court agrees that because fact-discovery

26  is now closed, Stolz should not be allowed to seek remuneration for any loss of rents.  Any such

27  allowance would similarly be actually and substantially prejudicial to Travelers.

28  ///

<u>Conclusion – No damages for additional living expenses or loss of rents.</u>

Considering the relevant factors, the undersigned finds the public policy favoring a disposition of these damages on the merits is severely outweighed by the lack of an expeditious resolution in this case, the courts need to manage its docket, the prejudice to Travelers, and the unavailability of less-drastic sanctions.  <u>See</u> <u>Rio Properties, Inc. v. Rio Int'l Interlink</u>, 284 F.3d 1007, 1022 (9th Cir. 2002) (laying out the five-factor test regarding dispositive sanctions).  This discovery dispute has eaten up over a year and a half of the parties' time.  Discovery is now closed, and reopening it for the parties to begin investigating these two 'new' lines of damages is the antithesis of expedience.  The court has already issued monetary sanctions against Stolz, but this has not deterred him from submitting inconsistent answers in his responses.  Thus, Stolz should be barred from asserting damages claims for "additional living expenses" and "loss of rents."  Rule 37(b)(2)(A)(i); <u>cf.</u> <u>Hawecker v. Sorenson</u>, 2012 WL 2466615, at *3 (E.D. Cal. June 27, 2012) (where defendants caused five-month delay in responding to discovery requests, pushing past the close of fact discovery, and where defendants failed to follow the court's order to respond to discovery, issue sanctions were warranted under Rule 37(b)); <u>with</u> <u>Silver Textile, Inc. v. D Lux Brands</u>, 2013 WL 12138985, at *2 (C.D. Cal. Oct. 9, 2013) (monetary sanctions appropriate for discovery abuses, but not harsher sanctions, where discovery had not yet closed and the court issued specific order requiring compliance).

**II.      Stolz's responses to the Residence Questions are deficient, warranting sanctions.**

The court has overseen this discovery dispute since January of 2019, and has observed Stolz continually give evasive answers to the Residence Questions—despite the court's considerable guidance on how he might answer in a way that respects the spirit and purposes of the federal discovery rules.  After over a year of overseeing this dispute, the undersigned has concluded Stolz is unwilling to provide full and fair answers to the Residence Questions and is unwilling to assist his counsel in a reasonable inquiry.  Thus, the undersigned concludes that Rule 37 sanctions are warranted.

From the beginning, the undersigned has attempted to be mindful of the scope of this lawsuit—a bad-faith insurance case.  Stolz maintains that in the winter of 2017, the Property was

1   damaged due to severe storms and flooding.  (ECF No. 1-1 at ¶ 2.)  A review of Travelers's

2   Denial of Coverage Letter (submitted for in-camera review) indicates that Travelers denied

3   coverage based on its expert's inspection of the Property.  This expert opined that much of the

4   damage existed prior to the winter 2017 storms, and was likely caused by "wear and tear,

5   deterioration, inadequate maintenance and faulty design,"—all of which are purportedly excluded

6   from the Policy.  Stolz contends Travelers's failure to pay is a breach of the Policy, done in bad

7   faith, as an unfair business practice.  (ECF No. 1.)  Thus, Stolz's use of the property, and his

8   ability to observe any damage, appears directly relevant to whether Travelers rightfully refused to

9   pay for the damage under the Policy—including loss-of-use and "diminution of value" damages.

10          To this end, Travelers asked Stolz a series of simple questions premised on a simple

11  inquiry: how much time did Stolz spend at the El Dorado Property?  (See ECF No. 106-3.)

12  Knowing Stolz would dispute that he had abandoned the place, and knowing he owned multiple

13  properties, Travelers asked for proof of usage of the El Dorado Property prior to the winter 2017

14  storms.  (See, e.g., ECF No. 106-4 at Request 1, requesting utility bills for the Property).  Further,

15  knowing Stolz owned multiple radio stations across the country, Travelers asked Stolz to account

16  for his whereabouts over a two-year period; this could further indicate how much time Stolz spent

17  in the Sacramento area—including at the El Dorado Property.  (See id. at Request 4, asking for

18  documents related to Stolz's business or personal trips.)  Under the Rules, Stolz was obligated to

19  respond to the interrogatories "to the fullest extent possible," produce the requested documents

20  under his control," and lodge objections "with specificity."  See Gorrell, 292 F.R.D. 632 (quoting

21  Rules 33 and 34).  Further, the rules impart an obligation to conduct a reasonable inquiry into the

22  matters before responses are submitted.  See Rule 26(g).

23          Instead, Stolz raised multiple boilerplate objections, and a month later supplemented with

24  the following vacuous statement:  "[T]he number of days per month during which [Stolz] resided

25  at the [El Dorado] PROPERTY fluctuated widely and cannot be stated with specificity for the

26  time period requested."  (ECF No. 106-5; 106-7 at 7.)  Over the next five months, the court gave

27  Stolz a chance to rethink his answer, then another chance after he failed to respond.  (See ECF

28  Nos. 43; 65.)  Stolz's pro se supplemental responses identified four properties he considered his

residence, claimed that he occupied the El Dorado Property "about half each month" in the years leading up to the storms, and stated that despite his "diligent search for data which might identity, with particularity, the number of days per month each property has been occupied[, he does] not have such data." (ECF No. 106-10.)  Stolz turned over no documents during this time.  At this point, it was obvious to the court that Stolz's responses to Interrogatories 2 and 3 were evasive, and his response to Document Production 4 was completely non-responsive.  See Wanderer v. Johnston, 910 F.2d 652, 655 (9th Cir. 1990) (finding issue sanctions warranted by the offending party's "complete indifference" to discovery requests, their obligations, and the court's orders, "thereby thwarting plaintiffs' every attempt to secure basic, legitimate discovery."); see also, e.g., Houston v. C.G. Sec. Servs., Inc., 820 F.3d 855, 859 (7th Cir. 2016) (affirming district court's imposition of sanctions for bad-faith discovery conduct, where party initially failed to respond, failed to begin conducting an inquiry until months later, eventual response was vague, and latter responses were inconsistent); Embassy of Fed. Republic of Nigeria v. Ugwuonye, 292 F.R.D. 53, 56 (D.D.C. 2013) (sanctions justified for, among other reasons, party's delay in responding and failure to disclose all relevant documents); Carlson v. Freightliner LLC, 226 F.R.D. 343, 368 (D. Neb. 2004) (finding discovery sanctions warranted due to defendant's consistent failure to respond to discovery requests, a disregard of court's prior order without an adequate or timely explanation, and insufficient and defective offers of discovery eventually made even after numerous extensions of time) (adopted, 226 F.R.D. 385).

    Travelers moved to enforce, and Stolz retained his second attorney.  (ECF Nos. 76, 79, and 81.)  The court, reassured by counsel's promise to thoroughly review his client's records, gave Stolz yet another opportunity to respond.  (ECF No. 87.)  And indeed, Stolz did supplement his response to Travelers's requests for production, turning over among other things his utility bills and cell phone records, and automobile gas receipts.  (See ECF No. 106-22.)  However, Stolz's responses to the Residence Questions were still deficient.  Stolz inexplicably removed one of his residences from his list (despite mentioning in a deposition another residence in Las Vegas), reasserted his statement that he lived at the El Dorado Property approximately half of his time, and stated he could not find any documents indicating his whereabouts—despite a "diligent

18

1   search." (ECF No. 106-17 and -18.)  He stated that neither his cell phone or the billing statements

2   tracked his location, and that he kept track of his calendar on notes that he discards.  (Id.)

3        The court agreed with Travelers that latest responses were still evasive, and was

4   concerned Stolz was not grasping the level of inquiry being required.  Thus, at the August 2019

5   hearing, the undersigned provided specific examples to Stolz's counsel on what might constitute a

6   "diligent search"; further supplemental responses were ordered.  (ECF No. 115.)  Shields v.

7   Koelling, 2012 WL 1435029 (E.D. Cal. April 25, 2012) (stating that in responding to discovery,

8   the responding party "shall use common sense and reason.")  The court overruled Stolz's

9   proportionality objections, reasoning that even though the "forensic review" being required was

10  above and beyond what might be required in a typical "reasonable inquiry" under Rule 26(g),

11  Stolz's abject failure to make efforts responsive to the questions necessitated a more-thorough

12  review.  (See ECF No. 121.)

13       Six more months passed.  Stolz retained his third attorney, and was given three additional

14  opportunities to supplement.  (ECF Nos. 122, 128, 134, 135 137, 138, 140, 143, 145, 146, 147,

15  149, 150, 155, 157.)  Stolz merely reiterated his evasive answers.  A simple comparison between

16  Stolz's March 20, 2020 submissions to Travelers and the documents Stolz provided to his counsel

17  (the latter of which was reviewed in camera) highlights Stolz's failures.

18       First, the court is concerned at current counsel's resubmission of objections that had been

19  previously overruled, including on relevance grounds.  (See ECF Nos. 84, 87, 115, and 120; see

20  also ECF 121 at 5.)  Simply, Stolz's whereabouts, and documents evidencing his travels, is at

21  least circumstantial evidence as to whether Stolz was ever present at the El Dorado Property to

22  observe any damage prior to the winter 2017 storms.  If Stolz was never in the El Dorado area, it

23  arguably lessens the amount Travelers owes in damages.  The court is aware that counsel had a

24  limited amount of time to review the record, and accepts the resubmission of these objections as

25  an oversight on counsel's part.  Stolz, however, is not excused from this failure to refrain from

26  asserting these objections, as the court has had multiple hearings on the subject—some with Stolz

27  physically present.  Thus, the court imputes Stolz with knowledge of the prior proceedings, and

28  finds his certification of the supplemental responses makes him responsible for the resubmission

1    of these frivolous objections.  See Computer Task Grp., Inc. v. Brotby, 364 F.3d 1112, 1115 (9th

2    Cir. 2004) (sanction warranted where offending party engaged in consistent, intentional, and

3    prejudicial practice of obstructing discovery, including asserting "repeated groundless

4    objections."); see also, e.g., Ugwuonye, 292 F.R.D. at 56 (sanctions justified for, among other

5    reasons, persisting in filing objections despite any authority to do so).

6           Second, as to the substance of Stolz's most-recent responses, they are as deficient as his

7    previous answers—and are, in fact, essentially the same as the responses from May, June and

8    August of 2019.  (Compare ECF Nos. 106-10, 106-17, and 106-18 with ECF No. 160 at ¶ 30.[8])

9    These responses indicate that Stolz only intends to offer a "best estimate," that he resided at El

10   Dorado Property of "approximately 15 days per month."  However, this answer, and the details

11   listed in support thereof, do not reflect that he has taken seriously his duty to "respond to the

12   fullest extent possible."  Gorrell, 292 F.R.D. at 632.  This deficiency is especially evident when

13   weighed against the absence of support for his "best estimate" in his documents, including both

14   those he submitted to Travelers and those identified by the court that Stolz did not bother to

15   obtain (as observed during the court's in-camera review).  For example:

- Stolz submitted to Travelers copies of his utility bills for the El Dorado Property, but no effort was made to compare those documents to the utility statements of his other properties;

- Stolz also indicated to the court that he primarily uses cash for his personal transactions. Thus, the court indicated that a review of Stolz's account statements might be in order, to demonstrate where he made cash or ATM withdrawals.  In response, Stolz submitted to his current counsel statements from a single bank account.  It is a checking account jointly held with his mother, which appears to be used primarily to satisfy someone's private-debt obligations.  This account does not show any cash withdrawals, and is completely non-responsive to the court's suggested inquiry.  Presumably, Stolz has other bank accounts

---

[8] Par. 30 is Counsel for Travelers's assertion as to Stolz's March 2020 supplemental responses. The originals were submitted to the court as part of its in-camera review, and have been verified against Counsel's declaration.

(whether in his own name, business accounts, or the Ravenswood Trust), but no effort was made to obtain those records to see if they reflected cash withdrawals near the El Dorado Property;

- The court suggested that Stolz's credit report might show whether he had other bank accounts, or potentially any credit cards.  Counsel asserted he reviewed the credit report, and it did not show any other accounts.  This credit report was not, however, turned over to the court as part of the in-camera review, so the court has no idea what information may or may not be on this document;

- The court did observe, from Stolz's gas receipts, that he makes use of prepaid cards to purchase gas for his car.  No effort appears to have been made to obtain the account statements from these accounts (or where he is withdrawing the cash to purchase the prepaid cards);

- The billing statements for Stolz's cell phone, electric and gas, and water and sewer all show that payments were made for those services, yet no effort was made to determine how those bills were paid.  When those paying accounts were identified, statements could have been produced demonstrating cash withdrawals, returned checks, etc.;

- Additionally, Stolz has made numerous assertions that the Ravenswood Trust holds some interest in the Property.  Assuming the trust has some funds to pay, for example, the mortgage or insurance premiums, these account statements could have been obtained and reviewed, in order to give some substance to Stolz's assertions;

- Finally, all parties are aware that Stolz owns multiple radio stations, and assumes Stolz has some expenditures that could have been identified in the corporate account. Examination of any of these accounts may have provided further information about Stolz's spending habits, and thus his whereabouts.

Further, Stolz's supplemental response to Travelers's Request for Production 4 is wholly inadequate.  For example:

- Stolz indicated he drives to his various radio stations, and to his credit submitted a number of gas receipts.  However, when it came to his business flights to his radio stations, Stolz

merely produced a half-page email forwarded from someone purportedly from his company that listed where he flew to on what dates, <u>with no indication of his departing city</u> (which, again, was the primary reason why Travelers requested the documents—to determine how often Stolz was in the Sacramento area).  Further, there is no indication of how he paid for the flights, and the half-page email specifically references other documents that were not produced;

- In addition to that flagrant disregard for his duty to respond, Stolz made no effort to submit any actual documents, receipts, emails—nothing—from his company, and it does not appear Stolz even attempted to contact any airlines, hotels, or car-rental outfits to obtain records from those entities (which could have shown location and other accounts).

The undersigned does not maintain that all of the things associated with the interrogatory responses needed to be examined (though the document production should have been).  However, when the documents Stolz did produce failed to support his "best estimate," any one of these avenues could have lent support to his assertions.  The absence of these things evinces his willfulness in evading his responsibility to fully respond.  <u>Gorrell</u>, 292 F.R.D. at 632.

Third, despite the numerous documents reviewed by Stolz's current counsel, it cannot be said that a "reasonable inquiry" has been conducted — as under the peculiar circumstances of this case.  <u>See</u> Rule 26(g), 1983 comm. note ("[Rule 26(g)] provides a deterrent to both excessive discovery and evasion by imposing a certification requirement that obliges each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection[;] [t]his standard is *heavily dependent on the circumstances of each case*.") (emphasis added).  Simply, it is clear from the court's in-camera review that many of the documents Stolz supplied to counsel affirmatively indicate that Stolz was not making purchases anywhere near the El Dorado Property—which should give counsel pause when certifying that his client's answers are "not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation[.]"  Rule 26(g)(1)(b).  In addition to the multiple holes identified in the bullet-points above, the court notes these additional facts that demonstrate a failure to question Stolz's "best estimate":

1   • None of Stolz's official government documents (driver's license, voter registration,

2   mailing address) show him residing in El Dorado County;

3   • Stolz failed to submit the registration for any of his vehicles—which may have provided

4   some clue as to which of his properties Stolz considered his residence[9];

5   • The gas receipts submitted by Stolz cover the relevant periods, but do not show any

6   purchases near the El Dorado Property—and in fact only show transactions near the

7   Robertson property (which Stolz has inexplicably removed from his most-recent

8   responses) and his other properties (which are hundreds of miles away from the

9   Sacramento area);

10  • The returned checks from the checking account show a different address than the El

11  Dorado Property.

12  A client cannot be allowed to submit only non-responsive documents for review, especially when

13  common sense dictates that there are many other commonly-available documents that could

14  support an assertion of Stolz's whereabouts.  See Reinsdorf, 296 F.R.D. at 604 ("[T]he discovery

15  process relies upon the good faith and professional obligations of counsel to reasonably and

16  diligently search for and produce responsive documents."); Shields, 2012 WL 1435029 (stating

17  that in responding to discovery, the responding party "shall use common sense and reason.").

18  Ultimately, the court will not fault Stolz's current counsel for this shortcoming in the Reasonable

19  Inquiry.  After a year and a half of Stolz's non-responsiveness—which included the withdrawal of

20  Stolz's first two attorneys for, among other reasons, ethical issues with Stolz's candor—it is

21  highly unlikely current counsel could utter any magic words that would convince Stolz to act

22  otherwise.  (See ECF Nos. 44, 122, 159.)  Thus, it appears current counsel's efforts were to just

23  diligently review every single document submitted by Stolz, and attempt to move this case

24  forward.  However, the court *does* hold Stolz responsible for this failure.  The court has informed

25  him multiple times that he cannot rely on the non-responsive documents and otherwise disregard

26

27  [9] Travelers contends the vehicles are not registered in El Dorado, as per information contained in
    Stolz's auto policies.  The court, however, could not verify this fact in its in-camera review, as
28  these documents were not provided.

1    his duty to obtain other, commonly-available documents.  The court finds that Stolz's evasiveness

2    has impeded his counsel's ability to conduct a reasonable inquiry, and thus imputes the failure

3    onto Stolz personally.  See, e.g., Bryant v. Armstrong, 285 F.R.D. 596, 612 (S.D. Cal. 2012)

4    (party's interrogatory responses that he did not know the answer, nor did he have possession,

5    custody, or control over the documents that may assist in answering the interrogatory, was

6    insufficient) (citing Moore's Federal Practice, § 33.102[3], at 33–75 (noting that a responding

7    party must state under oath that he is unable to provide the information and must describe the

8    efforts he used to obtain the information); Nat'l Ass'n of Radiation Survivors v. Turnage, 115

9    F.R.D. 543, 555 (N.D. Cal. 1987) (noting that it may be appropriate under the circumstance of a

10   case to impose a sanction on the client for a Rule 26(g) violation) (quoting Rule 11 Advisory

11   Committee's Note ("This modification brings Rule 11 in line with practice under Rule 37, which

12   allows sanctions for abuses during discovery to be imposed upon the party, the attorney, or

13   both.)).

14        Fourth, as the court indicated above in the background section, this is not the only

15   discovery dispute Stolz has instigated in this case.  In the first half of 2019, Stolz put off allowing

16   Travelers to conduct a site inspection of the Property, disregarded a court order to allow the

17   inspection, then attempted to cover up his abuse during the sanctions proceedings.  (See fn. 2,

18   above; see also ECF No. 104.)  Moreover, Stolz, for some unknown reason, filed a document on

19   behalf of the Ravenswood Trust, then fought Travelers's attempts to learn more about this entity

20   that purportedly held some interest in the Property.  These events do not lend credibility to Stolz's

21   assertion that he has tried to respond "to the best of his abilities."  Thomas v. Kaiser Found.

22   Hosps., 2007 WL 214441, at *2 (E.D. Cal. Jan. 26, 2007) ("The district court may properly

23   consider all of a party's discovery misconduct in weighing a motion to dismiss, including conduct

24   which has been the subject of earlier sanctions.") (quoting Payne, 121 F.3d 503 at 508).

25        In sum, the court finds Stolz's responses to Interrogatories 1-3 and Request for Production

26   4 to be conclusory and evasive.  They were crafted for the sole purpose of bringing about a legal

27   conclusion—that El Dorado was Stolz's primary residence, that he would have observed damage

28   to the home prior to the winter 2017 storms, and therefore Travelers's failure to pay for any

damage to the Property was done in bad faith.  This kind of evasiveness is unjust, which is why

the Rules equate evasiveness with non-responsiveness.  See Rule 37(a)(4) ("[A]n evasive or

incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or

respond.").  Given Stolz's multiple opportunities to supplement, the court can only conclude his

evasiveness is willful.  Thus, discovery sanctions are warranted.[10]  Rule 37(b)(2)(A) ("If a party .

. . fails to obey an order to provide . . . discovery, including an order under Rule . . . 37(a), the

court where the action is pending may issue further just orders."); Toth v. Trans World Airlines,

Inc., 862 F.2d 1381, 1385 (9th Cir. 1988) (finding terminating sanctions warranted by continued

and unjustified refusal to respond, even after court had ordered responses and attempted less

drastic sanctions for earlier noncompliance); see also Mulero-Abreu v. Puerto Rico Police Dep't,

675 F.3d 88, 93–94 (1st Cir. 2012) (finding the district court's dismissal of claims under Rule

37(b) within its discretion, where plaintiff's "failure to provide the required responses to both

interrogatories and requests for production was in flagrant disregard of multiple court orders.").

>Conclusion – Issue sanctions are warranted on Stolz's loss of use claim, and evidentiary
>sanctions are warranted for Stolz's diminution of value claim.

Rule 37 provides that any sanctions for discovery abuses may include:

>(i) directing that the matters embraced in the order or other
>designated facts be taken as established for purposes of the action,
>as the prevailing party claims;
>
>(ii) prohibiting the disobedient party from supporting or opposing
>designated claims or defenses, or from introducing designated
>matters in evidence; [and]
>
>***
>
>(v) dismissing the action or proceeding in whole or in part[.]

Rule 37(b)(2)(A).  The Ninth Circuit has counseled that if lesser sanctions have the potential to

remedy any abuse, this is preferable to dispositive sanctions.  Rio Properties, 284 F.3d at 1022

(the "availability of less drastic sanctions" is often determinative of whether dispositive sanctions

---

[10] In no way should Stolz or counsel take the comments above to indicate that Stolz should have another opportunity to supplement.  The undersigned has provided ample guidance over the past year, and Stolz has remained steadfast in his non-responsiveness.  Simply, that ship has sailed.

1  should lie). However, the Court has also stated that "[w]hat is most critical for case-dispositive

2  sanctions, regarding risk of prejudice and of less drastic sanctions, is whether the discovery

3  violations threaten to interfere with the rightful decision of the case." Connecticut Gen. Life Ins.

4  Co. v. New Images of Beverly Hills, 482 F.3d 1091, 1097 (9th Cir. 2007)). Further, "the court

5  must order the disobedient party, the attorney advising that party, or both to pay the reasonable

6  expenses, including attorney's fees, caused by the failure, unless the failure was substantially

7  justified or other circumstances make an award of expenses unjust." Rule 37(b)(2)(C).

8      The court has spent considerable time outlining Stolz's abuses, and finds them prejudicial

9  to Travelers's ability to defend its interests. Stolz spent a year and a half attempting to evade

10  having to answer, and any further attempts to get Stolz to comply would be a waste of the court's

11  time. See Tacori Enterprises v. Beverly Jewellery Co., 253 F.R.D. 577, 582 (C.D. Cal. 2008).

12  (reciting the rule that when a court order is violated, the public's and court's interests in

13  expeditiously managing the litigation is counterbalanced by the public policy in favor of a merits

14  determination—making 'prejudice' and 'availability of lesser sanctions' dispositive). As

15  described throughout this Section, Stolz's evasive responses prejudices Travelers's ability to

16  pursue its defenses. Thus, the court turns to tailoring an appropriate sanction.

17      Travelers seeks an issue-dispositive sanction, that Stolz be precluded from seeking

18  damages for loss of use or diminution of value. On Stolz's claim for loss of use of the property,

19  the court agrees to this approach. It is clear that Stolz is attempting to manufacture a legal

20  conclusion in asserting he used the El Dorado Property at least 15 days per month—despite the

21  absolute absence of any evidence supporting such an assertion. In reviewing pleadings, or in

22  examining a self-serving declaration as part of a Rule 56 proceeding, the court need not accept

23  such conclusory assertions as factual. The court need not do so here, either. Thus, the

24  undersigned recommends any claim of Stolz's for loss of use of the property be dismissed as a

25  sanction for his abusive actions. Rule 37(b)(2)(A)(v).

26      However, as to Stolz's diminution of value claim, the court lends considerable weight to

27  Stolz's argument that this sanction strikes too broadly. Counsel for Stolz indicates that Travelers

28  is in possession of its own documents indicating that the company may have been aware of the

state of the Property prior to the winter 2017 storms, as indicated by Travelers's document production to Stolz.  (ECF No. 162 at ¶ 7.)  Thus, the undersigned concludes that an issue-based sanction would not be appropriate in this case.  See, e.g., Bluestein v. Central Wisconsin Anesthesiology 296 F.R.D. 597, 603 (W.D. Wis. 2013) (finding that even though evidentiary sanction would make plaintiff's case near impossible to prove, defendant's 'absence of evidence' argument was more appropriate for summary judgment).

Instead, the court concludes that an evidentiary-based discovery sanction is warranted, as per Rule 37(b)(2)(A)(i) and (ii).  Stolz's abuse is that he is evading the question of how much time he spent at the El Dorado Property.  Thus, for Stolz's claim of "diminution of value" of the Property, the court recommends the following sanction be issued:

> (i) It be presumed that Stolz did not reside at the El Dorado Property from January 1, 2013 onward, and that Stolz did not travel to or from the El Dorado Property, for business or personal reasons, during this time.  Thus, Stolz had no ability to observe any damage to the property during this time;

> (ii) In support of his diminution of value claim, Stolz may rely on any documents already exchanged between the parties.  However, Stolz may not rely on his own self-serving statements—whether written in his interrogatory responses or stated at any deposition— as to his observations about the state of the Property.

The undersigned believes that this evidentiary sanction is the most expedient and just way of resolving this long-running discovery dispute, as it places the issue of interpreting the Policy language and the assessment of the Property's "diminution in value," before the district court in the summary judgment phase.[11]  See, e.g., Karimi v. Golden Gate Sch. of Law, 361 F. Supp. 3d 956 (N.D. Cal. 2019) (finding discovery sanction appropriately tailored, where offending party was non-responsive, and monetary sanctions would have been ineffective, thus leading district court to preclude injection of the party's own subjective testimony into case) (aff'd, 796 F. App'x

---

[11] This is particularly fair given that, at times, Travelers has requested a sanction deeming the El Dorado Property to not be his "residence premises."  Conversely, Counsel for Stolz argues that, legally, there is no requirement that the El Dorado Property be Stolz's "Primary Residence" in order for the Policy to take effect.  (ECF No. 162 at ¶ 3.)  The scope of the Policy is not—nor has it ever been—before the undersigned.  Instead, the undersigned has simply been endeavoring to have Stolz comply with the spirit and purposes of the rules of discovery.  Thus, any sanction that relies on interpreting the Policy's language would be inappropriate.

462 (9th Cir. 2020)); <u>Raimey v. Wright Nat. Flood Ins. Co.</u>, 76 F. Supp. 3d 452, 474 (E.D.N.Y. 2014) (finding no abuse of discretion in the imposition of evidentiary sanctions under Rule 37(b)(2)(A)(ii) that "merely limits [the party] to presenting the ample expert testimony it already possesses in support of its defense"; sanction could not be construed as estopping offending party from presenting one of its defenses, and magistrate judge did not assess the most severe sanctions, but took measured step of preventing the party from further supplementing its defense; thus, sanction was narrowly tailored to the purpose of preventing carrier from further delaying the proceedings by engaging in additional discovery).

Finally, the undersigned finds Stolz's repeated failures to supplement his responses to be unjustified, and no just reason exists to deny Travelers its reasonable expenses. Thus, under Rule 37, the court is obligated to order Stolz to pay Travelers's reasonable expenses, including attorneys' fees, caused by Stolz's failures. Rule 37(b)(2)(C); <u>Richmark Corp. v. Timber Falling Consultants</u>, 959 F.2d 1468, 1482 (9th Cir. 1992) (finding district court properly awarded fees and costs incurred in obtaining court order compelling discovery and in litigating issues pertaining to sanctions motions under Rule 37(b)(2)). The court already issued monetary sanctions against Stolz in its September 2019 order, which Stolz has paid. Thus, Travelers's fee request should be based on the time Counsel for Travelers has spent on this issue since September 2019. Because these findings and recommendations will be submitted to the presiding district judge for review, Travelers shall submit a declaration during the objections period with its requested fee amount; the declaration shall detail Counsel's hours and rate, and include any other relevant legal authority. This will allow Stolz to raise any objections to the amount sought (should he wish to do so) during the objections period, and will allow the district judge to review the reasonableness of Travelers's request and, if granted, tally the final award.

## **RECOMMENDATIONS**

Accordingly, it is hereby RECOMMENDED that:

1. Defendant's second motion to enforce (ECF No. 105, as renewed by ECF No. 158) be GRANTED IN PART;

2. Plaintiff be SANCTIONED for his evasive and non-responsive answers to defendant's

second set of interrogatories, questions one, two and three, and its first set of requests for production of documents, question four;

3.  The following sanctions be ENTERED:

   a.  That plaintiff be barred from seeking damages for additional living expenses, loss of rents, or loss of use of the Property; and

   b.  For purposes of plaintiff's claims in this action, it be presumed that Stolz did not reside at the El Dorado Property from January 1, 2015 onward, and that he did not travel to or from the El Dorado Property, for business or personal reasons, during this time.  Plaintiff may rebut this presumption by relying on any documents already exchanged between the parties.  However, plaintiff may not rely on his own self-serving statements—whether written in his interrogatory responses, stated at any deposition, or offered at trial—that he resided at the El Dorado Property.

   c.  That plaintiff be required to pay the reasonable expenses of Travelers's attorneys' fees for having to bring, and renew, a motion to enforce.

4.  After this discovery dispute is resolved, this case be referred back to the assigned district judge for further proceedings, including the scheduling of dispositive motions.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).

Within **seven (7) days** of being served with these findings and recommendations, defendant shall file its statement of reasonable expenses to the court, and shall serve this statement on plaintiff.

Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's

1   order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153,

2   1156-57 (9th Cir. 1991).

3   Dated:  April 28, 2020

4

5                                                                  KENDALL J. NEWMAN
                                                                UNITED STATES MAGISTRATE JUDGE

6

7   stol.1923

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28